# EXHIBIT C



'ODER JUDICIAL DE LA FEDERACIÓN

**AMPARO DIRECTO:**
D.A. 237/2015.

**QUEJOSA:** SCHOLASTIC, INC.

**QUEJOSA        ADHESIVA:**
CORPORACIÓN        MÉXICO
ESCOLÁSTICA, S.A. DE C.V.

**MAGISTRADO RELATOR:**
JESUS    ANTONIO    NAZAR
SEVILLA.

**SECRETARIA:**
TANIA    ELIZABETH    ESCOBAR
MORA.

México, Distrito Federal. Acuerdo del Cuarto Tribunal Colegiado en Materia Administrativa del Primer Circuito, correspondiente a la sesión del quince de julio de dos mil

**VISTOS** para resolver los autos del expediente relativo al amparo directo promovido por SCHOLASTIC, INC., y,

**R E S U L T A N D O:**

**PRIMERO.-** Por escrito presentado el veinticinco de marzo de dos mil quince en la Oficialía de Partes de la Sala Regionales Metropolitanas del Tribunal Federal de Justicia Fiscal y Administrativa, **SCHOLASTIC, INC.**, por conducto de su apoderado Antonio Belaunzarán Martínez, demandó el amparo y protección de la Justicia Federal en contra de la

sentencia de tres de febrero de dos mil quince, dictada por la Sala Especializada en Materia de Propiedad Intelectual del tribunal en cita, en el juicio contencioso administrativo número 533/11-EPI-01-4.

En la demanda de garantías se estimó violado el contenido de los artículos 14, 16 y 17 de la Constitución Política de los Estados Unidos Mexicanos, se formularon conceptos de violación y se tuvo como terceros interesados a la Subdirectora Divisional de Prevención de la Competencia Desleal del Instituto Mexicano de la Propiedad Intelectual (en adelante IMPI) y a Corporación México Escolástica, S.A. de C.V.



**SEGUNDO.-** De la demanda correspondió conocer, por razón de turno, a este Cuarto Tribunal Colegiado en Materia Administrativa del Primer Circuito, donde por acuerdo de presidencia de ocho de abril de dos mil quince la admitió a trámite, registrándola con el número D.A. 237/2015, ordenándose dar vista al agente del Ministerio Público Federal de la Adscripción, quien se abstuvo de formular pedimento.

Por auto de siete de mayo de dos mil quince, emitido por la presidencia de este órgano jurisdiccional, se admitió a trámite el amparo adhesivo presentado por la tercera interesada, Corporación México Escolástica, S.A. de C.V.

Mediante auto de diecinueve de mayo de dos mil quince, este tribunal tuvo por recibido el escrito por el cual la quejosa realiza manifestaciones en contra del amparo adhesivo.



POCER JUDICIAL DE LA FEDERACIÓN

**TERCERO.-** Encontrándose los presentes autos en estado de resolución, por acuerdo de diecinueve de mayo de dos mil quince se turnaron al magistrado relator para los efectos de la formulación del proyecto a que se refiere el artículo 183 de la Ley de Amparo.

Por acuerdo de veinticinco de mayo de dos mil quince, este tribunal tuvo por recibido el oficio por el cual el Coordinador Departamental de Amparos del IMSSS realiza manifestaciones.

**CUARTO.** En proveído de veinticinco de mayo del año que transcurre, se dio a conocer la nueva integración de este Cuarto Tribunal Colegiado en Materia Administrativa del Primer Circuito, por la comisión temporal por necesidades del servicio, de la magistrada Guillermina Coutiño Mata, en sustitución del magistrado Salvador Mondragón Reyes, en la plaza en la que es titular el magistrado Jean Claude André Tron Petit, con efectos a partir del uno de junio de dos mil quince, y hasta en tanto lo determine el Pleno del Consejo de la Judicatura Federal, por virtud del oficio SEADS/387/2015, suscrito por el Secretario Ejecutivo de Adscripción del propio Consejo.

**C O N S I D E R A N D O:**

**PRIMERO.-** Este Tribunal tiene competencia legal para conocer del presente juicio y la vía elegida es correcta, de conformidad con lo dispuesto en los artículos 103 y 107, fracciones V, inciso b), y VI, de la Constitución Política de los Estados Unidos Mexicanos; 33, fracción II, 34 y 170, de la Ley de Amparo; así como el 37, fracción I, inciso b), y 38 de la Ley

D.A. 237/2015.

4

Orgánica del Poder Judicial de la Federación.

**SEGUNDO.-** La demanda de amparo se presentó de manera oportuna, toda vez que la sentencia reclamada se notificó a la quejosa personalmente el dos de marzo de dos mil quince, surtiendo efectos al día siguiente, por lo que el término comenzó a correr a partir del cuatro de marzo y finalizó el veinticinco del mes y año en cita, por lo que si la demanda se presentó el veinticinco de marzo del año en mención, está en tiempo.

De igual forma, el amparo adhesivo fue interpuesto dentro del término de quince días que establece el artículo 181 de la Ley de Amparo, toda vez que el acuerdo de admisión de la demanda de amparo se notificó personalmente por comparecencia a la parte tercero interesada el diecisiete de abril de dos mil quince[1], y surtió efectos al día hábil siguiente; por lo que el término para presentar amparo adhesivo comenzó a transcurrir el veinte de abril y concluyó el doce de mayo; por tanto, si el amparo adhesivo se presentó el seis de mayo de dos mil quince, entonces se estima oportuno.

**TERCERO.-** La existencia del acto reclamado se acredita con los autos originales del expediente 533/11-EPI-01-4, remitidos junto con el informe justificado correspondiente, dentro del cual se dictó la sentencia que constituye el acto reclamado.

**CUARTO.-** La sentencia que constituye el acto

---

[1] Foja 30 vuelta del cuaderno de amparo.



POGER JUDICIAL DE LA FEDERACIÓN

reclamado se sustenta en las consideraciones y resolutivos siguientes:



*"PRIMERO.- TÉRMINOS DE LA EJECUTORIA QUE SE CUMPLIMENTA.- La ejecutoria que se cumplimenta, medularmente, resolvió: - - - "(Se transcribe)". - - - SEGUNDO.- ANÁLISIS Y ALCANCE DE LA EJECUTORIA QUE SE CUMPLIMENTA.- De la lectura integral a la transcripción anterior, se advierte que el amparo concedido a la persona moral SCHOLASTIC, INC., en su carácter de parte actora en el presente juicio, fue para que se deje insubsistente la sentencia reclamada y pronuncie una nueva en la que deberá: reiterar las consideraciones que no son materia de litis en el presente juicio de amparo y analizar nuevamente los conceptos de impugnación segundo y tercero de la demanda de nulidad, pero esta vez deberá dar respuesta a cada uno de los planteamientos expuestos en ellos y que quedaron sintetizados en esta sentencia, bajo los incisos del a) al f); lo que deberá hacer con plenitud de jurisdicción. - - - En las anotadas consideraciones, en cumplimiento a la ejecutoria antes señalada, dictada en el juicio de garantías D.A. 701/2014, por el Octavo Tribunal Colegiado de Circuito del Centro Auxiliar de la Tercera Región, con residencia en Guadalajara, Jalisco, y toda vez que mediante acuerdo de 03 de febrero de 2014, esta Sala dejó insubsistente la sentencia de 11 de julio de 2014; se procede a*

*emitir una nueva resolución, conforme a los lineamientos que han quedado transcritos y en cumplimiento a la ejecutoria de mérito con plenitud de jurisdicción. - - - TERCERO.- COMPETENCIA DE LA SALA.- (...)- - - CUARTO.- EXISTENCIA DE LA RESOLUCIÓN IMPUGNADA.- (...).- QUINTO.- ANÁLISIS DE LAS EXCEPCIONES PLANTEADAS POR LA PARTE ACTORA <u>SE REITERA ESTE CONSIDERANDO AL NO SER MATERIA DE LA EJECUTORIA EN CUMPLIMIENTO.-.(....) - - - SEXTO</u>.- ILEGALIDAD DE LA RESOLUCIÓN IMPUGNADA POR INDEBIDA FUNDAMENTACIÓN Y MOTIVACIÓN .- De conformidad con lo previsto por el artículo 50 de la Ley Federal de Procedimiento Contencioso Administrativo, se procede al estudio de los conceptos de impugnación SEGUNDO y TERCERO de la demanda, en los que la actora, substancialmente, sostiene lo siguiente: - - - "(Se transcribe)". - - - La autoridad demandada y el tercero interesado al formular su contestación a la demanda sostuvieron la legalidad y validez de la resolución impugnada y reiteraron sus fundamentos y motivos. Argumentos lógico juridicos que se tienen por reproducidos como si a la letra se insertasen. - - - <u>A efecto de dar debido cumplimiento a la ejecutoria</u> emitida por el Octavo Tribunal Colegiado de Circuito del centro Auxiliar de la Tercera Región, con sede en Guadalajara, Jalisco Tribunal Colegiado en Materia*







*Administrativa del Primer Circuito, a continuación se procede al estudio de los argumentos bajo los incisos a) al f), de la ejecutoria de mérito: - - "a) Que no es posible determinar que existieron actos de competencia desleal porque "Scholastic", Inc., no compite comercialmente con "Corporación México Escolástica", sociedad anónima de capital variable, debido a que la primera en mención no presta servicios de telecomunicaciones o de acceso a Internet, sino únicamente servicios amparados bajo las marcas con los registros 493651 "Scholastic y DISEÑO" y 487969 "Scholastic", ambas en clase 41; así como 493652 "Scholastic y DISEÑO" y 487344 "Scholastic", ambas en la clase 35, que son servicios educativos y venta de libros y materiales educativos en línea.- b) Que, si bien la tercero interesada, "Corporación México Escolástica", sociedad anónima de capital variable, se dolió de que la actora, "Scholastic", Inc., registró varios dominios en internet que incluyen la palabra "escolástica" (escolastica.org, escolastica.biz, escolastica.info, escolastica.net, escolastic.org, escholastica.com, escholastica.net, escholastica.org, escholastica.info, escholastica.biz), en los cuales se hace la redirección a la página de internet oficial scholastic.com, lo cierto es que, el registro y uso de un nombre de dominio no constituye por sí el uso marcario.- Y que, en su concepto, ese hecho resulta insuficiente para determinar que haya usado la marca "Escolástica y DISEÑO" registrada a favor de la tercero interesada, porque, según aduce, en su página de Internet únicamente usa las marcas "Scholastic" y "Scholastic y DISEÑO", sin hacer uso de la marca "Escolástica Y DISEÑO" (fojas 10-18 y 28-29 del expediente de nulidad).- Aunado a que, la*

*palabra "escolástica" es la traducción al idioma español de la diversa "scholastic", lo que, a decir de la actora, explica que "Scholastic", Inc., haya registrado varios dominios con la palabra en español para redireccionarlos a su página oficial ubicada en scholastic.com (fojas 23-24 y 31 ibidem).- c) Que la autoridad demandada omitió analizar si en realidad "Scholastic", Inc. presta servicios de publicidad o de telecomunicaciones como los amparados por los registros marcarios propiedad de la tercero interesada (fojas 18-19, ibidem).- d) Que para determinar válidamente la infracción imputada, a consecuencia de un acto de competencia desleal, resultaba insuficiente que "Scholastic", Inc., hubiere registrado algunos nombres de dominio en internet que incluyeran la palabra "escolástica", sino que además era necesario que "[...] hubiere llevado a cabo cualquier acto mediante el cual hubiere desviado la clientela que buscaba servicios de publicidad (clase 35) o de telecomunicaciones (clase 38) [...]" prestados por la tercero interesada "Corporación México Escolástica", sociedad anónima de capital variable, y que, sin embargo, esto último no quedó acreditado (fojas 20-22 y 28 del expediente de nulidad).- e) Que en el procedimiento administrativo no se demostró que "Scholastic", Inc., preste en México servicios de publicidad o de telecomunicaciones, ya que la aparición de algunos banners publicitarios de empresas de Estados Unidos no implica que algún tercero pague por promocionar en la página de internet de "Scholastic", Inc., determinados productos o servicios, pues en aquella solamente promociona los productos educativos que presta y no los de cualquier tercero que desee*



D.A. 237/2015.

9



PODER JUDICIAL DE LA FEDERACIÓN



*pagarle por ofertar sus productos o servicios en la página de internet (fojas 22, 28 y 30, ibidem)., y f) Que la autoridad demandada no justificó por qué los consumidores pueden caer en error o confusión a razón del registro de los dominios de internet y redireccionamiento a la página oficial de "Scholastic", Inc., (foja 24 del expediente de nulidad) y tampoco se acreditó ni documentó caso alguno de confusión de consumidores del mercado mexicano; lo que, a consideración de la actora, aquí quejosa, era necesario para evidenciar la afectación a la tercero interesada (fojas 25-26, ibidem). - - En primer lugar, para una mayor comprensión de la <u>competencia desleal</u>, de conformidad con los artículos 1° y 2° de la Ley Federal de Procedimiento Administrativo y 222 del Código Federal de Procedimientos Civiles de aplicación supletoria a la materia, y que facultan a esta Autoridad a tomar en consideración los criterios doctrinales existentes, de forma preliminar procederemos a citar lo que se entiende por competencia de acuerdo con la doctrina correspondiente siguiendo la opinión del maestro Hermenegildo Baylos Corroza, en su obra "Tratado de Derecho Industrial", editorial Civitas, Madrid 1978, Pág. 226-227, segunda edición 1981, que señala textualmente lo siguiente: - - - "(Se transcribe)". - - - Asimismo, es preciso señalar que el artículo 10 bis 1) de la Convención de la Unión de París de 1883, adoptado en Estocolmo en el año de 1967, del cual nuestro país es signatario, establece la competencia desleal y dispone: - - -*

"(Se transcribe)". - - - *De dicho precepto se desprende que Ley de la Propiedad Industrial, adoptó el segundo inciso en la disposición prevista en la fracción I de su artículo 213, al establecer que es infracción administrativa realizar actos contrarios a los buenos usos y costumbres en la industria, comercio y servicios que impliquen competencia desleal y que se relacionen con la materia que dicha ley regula, para obtener un beneficio propio, en detrimento de la persona de la cual se aprovecha. - - - En este sentido, la competencia desleal es definida por el Poder Judicial de la Federación: - - - MARCAS COMPETENCIA DESLEAL. REQUISITOS PARA QUE SE ACTUALICE LA INFRACCIÓN ADMINISTRATIVA PREVISTA EN LA LEY DE INVENCIONES Y MARCAS.* "Se transcribe..." - - - *Esto es, de las anteriores transcripciones se desprende que la competencia desleal se genera cuando existen de parte de un competidor actos contrarios a los buenos usos y costumbres que contravengan las disposiciones que la Ley aplicable prevé, aunado a que con tales actos se cause confusión o se induzca al público consumidor a error o engaño, obteniendo así ventajas indebidas y sustrayendo, invadiendo y explotando el derecho de otro competidor. - - - En ese orden de ideas, para que se actualice la competencia desleal que nos ocupa es necesario que se cumpla con los siguientes requisitos, a*






POCUI JUDICIAL DE LA FEDERACIÓN



30LEGIADO
iISTRATiVA
RCUitOci

*saber: - - - a) Que en el ejercicio de actividades industriales o comerciales o de servicios, existan por lo menos dos competidores que concurran en el mercado. - - - b) Que la concurrencia sea en igualdad de circunstancias, es decir, que ofrezcan en venta productos o servicios de la misma clase o especie. - - - c) Que tratándose de productos o servicios según sea el caso se ofrezcan en los mismos medios o en los mismos canales de distribución y, - - - d) Que uno de los competidores, en este caso el presunto infractor, utilizando cualquier medio o procedimiento contrario a los buenos usos y costumbres en la industria, comercio y servicios, relacionados con la materia regulada por la Ley de la Propiedad Industrial, sustraiga, utilice o explote el derecho comercial o industrial del otro recurrente, en este caso el de la actora, para obtener un beneficio propio o para un tercero, en perjuicio de dicha actora. - - - Por lo expuesto, y a fin de dar debido cumplimiento a la ejecutoria emitida por el Cuarto Tribunal Colegiado en Materia Administrativa del Primer Circuito, en el D.A. 701/2014, respecto del argumento del inciso a) en el que aduce medularmente la parte actora que no es posible determinar que existieron actos de competencia desleal porque SCHOLASTIC, INC., no compite comercialmente con CORPORACIÓN MÉXICO ESCOLÁSTICA, lo que resulta infundado, toda vez que como se señaló con antelación es innecesario*

*que ambos competidores comercialicen los mismos bienes o servicios*, sin embargo por lo que hace a la documental consistente en el acta de la visita de inspección a las siguientes direcciones de Internet: www.escolastica.org, www.scholastic.com, www.scholastic.com.mx, www.escolastic,com, www.escolastic.net y www.scholastic.org, acta circunstanciada de fecha 22 de septiembre de 2008, que fue levantada por el personal del Instituto Mexicano de la Propiedad Industrial, se desprende lo siguiente: - - - "(Se insertan imágenes)". - - - *De las anteriores reproducciones de las fojas 725 a 729 del expediente administrativo P.C. 115/2008(I-23)1258, que obra en un anexo al presente juicio de nulidad se desprende que la parte actora en sus denominaciones de dominio ofrece anuncios en línea, tarifas de anuncios en línea, ofrece el contacto con el equipo de publicidad, la comercialización de CoachPlus y anunciarse, actividades que comprenden la publicidad y comercialización que protegen las marcas 671124 ESCOLÁSTICA Y DISEÑO, y 669004 ESCOLÁSTICA Y DISEÑO de las cuales es titular CORPORACIÓN MÉXICO ESCOLÁSTICA, por lo que contrario a lo manifestado por la parte actora si se acredita la competencia desleal al ofrecer a través de sus nombres de dominio servicios de publicidad y de telecomunicaciones, como se acreditó con antelación con la reproducción de las*





**D.A. 237/2015.**

PODER JUDICIAL DE LA FEDERACIÓN

*páginas de internet*. - - - *Ahora bien por cuanto hace a los incisos b)* (sic)*, en los que manifiesta la parte actora que sus nombres de dominio redireccionan a su página de internet oficial scholastic.com, y lo cierto es que el registro y el uso de un nombre de dominio no constituye por sí el uso marcario, efectivamente como lo manifiesta la parte actora sus nombres de dominio redireccionan a su página oficial, sin embargo es hasta el momento en qué se acede a los nombres de dominio de la parte actora www.escolastica.org, www.scholastic.com, www.scholastic.com.mx, www.escolastic.com, www.escolastic.net y www.scholastic.org que el usuario se puede percatar de tal situación y por el contrario confunde al usuario, haciendo suponer que al acceder en particular a los nombres de dominio www.escolastica.org, www.escolastic.com, y www.escolastic.net se trata de las marcas de las cuales es titular la ahora tercero interesada, toda vez que en primer lugar existe una semejanza en grado de confusión entre los registros marcario propiedad de la ahora tercero interesada entre CORPORACIÓN MÉXICO ESCOLÁSTICA (671124 ESCOLÁSTICA Y DISEÑO, y 669004 ESCOLÁSTICA Y DISEÑO, ambas registradas en las clases 38 telecomunicaciones y 35 publicidad, respectivamente) y los nombres de dominio de la hoy actora www.escolastica.org, www.escolastic.com, y www.escolastic.net es decir, si bien es cierto que la*

*similitud o identidad de dos o más denominaciones marcarias no es un elemento esencial para determinar su confusión, <u>lo cierto es que sí constituye un elemento indicativo de la confusión marcaria que se puede generar en el público consumidor, lo cual se complementa con el análisis conjunto y alternado de las denominaciones, es decir, observándolas por la totalidad de sus elementos y pronunciándolas una seguida de la otra, tal y como lo han señalado los criterios jurisdiccionales,</u> hecho que se aprecia en el ejercicio que a continuación se expone: - - - ESCOLASTICA - - - www.escolastica.org - - - www.scholastic.com - - - www.scholastic.com.mx - - - www.escolastic,com - - - www.escolastic.net - - - www.scholastic.org - - - ESCOLASTICA - - - www.escolastica.org - - - www.scholastic.com - - - www.scholastic.com.mx - - - www.escolastic,com - - - www.escolastic.net - - - www.scholastic.org- - - ESCOLASTICA - - - www.escolastica.org - - - www.scholastic.com - - - www.scholastic.com.mx - - - www.escolastic,com - - - www.escolastic.net - - - www.scholastic.org - - - Lo anterior, no es negado por la parte actora, por el contrario sostiene que escolástica es la traducción al español de scholastic, sin embargo esto no desacredita la semejanza en grado de confusión que existe entre los registros marcarios de los cuales es titular la hoy tercero interesada 671124 ESCOLÁSTICA Y DISEÑO, y 669004 ESCOLÁSTICA Y DISEÑO y los*



PODER JUDICIAL DE LA FEDERACIÓN

*nombres de dominio registrados por la hoy actora SCHOLASTIC, INC. - - - En esa tesitura, la competencia desleal se genera cuando existen de parte de un competidor, actos contrarios a los buenos usos y costumbres en la industria, comercio y servicios que contravengan las disposiciones que la Ley aplicable prevé, aunado a que con tales actos se cause confusión o se induzca al público consumidor a error o engaño, obteniendo así ventajas indebidas y sustrayendo, infringiendo y explotando el derecho de otro competidor. - - - Cabe agregar, que entre los derechos derivados de las marcas 671124 ESCOLÁSTICA Y DISEÑO, y 669004 ESCOLÁSTICA Y DISEÑO, de las cuales es titular la hoy tercero interesada CORPORACIÓN MÉXICO ESCOLÁSTICA, encuentran su protección contra actos de competencia desleal, con los nombres de dominio www.escolastica.org, www.scholastic.com, www.scholastic.com.mx, www.escolastic.com, www.escolastic.net y www.scholastic.org, de los cuales es titular la hoy actora SCHOLASTIC, INC., aparentando que existe una relación entre ambos, sin que eso sea cierto. - - - De tal forma, que la actora al identificar sus nombres de dominio con la palabra "escolastic", misma que resulta ser semejante en grado de confusión a los registros de la hoy tercero interesada, siendo que en dichos nombres de dominio se ofrecen servicios de publicidad y telecomunicaciones los cuales*

D.A. 237/2015.

16

encuadran dentro de los productos que se encuentran protegidos por el los registros marcarios de la hoy tercero interesada, es claro que dicha conducta constituye un acto de competencia desleal, toda vez que el mismo se aprovecha de la imagen y reputación de las marcas del hoy tercero interesado. - - - Sirve de apoyo a lo anterior: - - - VII-P-SS-20 - - - **COMPETENCIA DESLEAL EN MATERIA DE PROPIEDAD INDUSTRIAL.-** "(Se transcribe)". - - - En cuanto hace al _inciso c)_, en el que medularmente aduce que se omitió analizar si en realidad la hoy actora presta servicios de publicidad o telecomunicaciones; es preciso reproducir lo estudiado en el inciso a) por lo que hace a la documental consistente en el acta de la visita de inspección a las siguientes direcciones de Internet: www.escolastica.org, www.scholastic.com, www.scholastic.com.mx, www.escolastic.com, www.escolastic.net y www.scholastic.org, acta circunstanciada de fecha 22 de septiembre de 2008, que fue levantada por el personal del Instituto Mexicano de la Propiedad Industrial, y de la reproducción que de las mismas se hizo, ya que de las mismas se desprende que efectivamente la parte actora dentro de sus nombres de dominio que resultan ser semejantes en grado de confusión con los registros marcarios de la hoy tercero interesada, realiza actos de publicidad al ofrecer anuncios en línea diversos a los productos






PODER JUDICIAL DE LA FEDERACIÓN



que protegen sus marcas registradas. - - - Ahora bien en el inciso d) la parte actora aduce medularmente que para determinar válidamente la infracción imputada, a consecuencia de un acto de competencia desleal, resultaba insuficiente que "Scholastic", Inc., hubiere registrado algunos nombres de dominio en internet que incluyeran la palabra "escolástica", sino que además era necesario que "[...] hubiere llevado a cabo cualquier acto mediante el cual hubiere desviado la clientela que buscaba servicios de publicidad (clase 35) o de telecomunicaciones (clase 38) [...]" prestados por la tercero interesada "Corporación México Escolástica", sociedad anónima de capital variable, y que, sin embargo esto último no quedó acreditado (fojas 20-22 y 28 del expediente de nulidad). - - - En primer término resulta conveniente transcribir a continuación el artículo 213, fracción I, de la Ley de la Propiedad Industrial, que a la letra dice: - - "Artículo 213.- (Se transcribe)". - - - De la lectura del numeral transcrito, se colige, para que se actualice la infracción administrativa de referencia, es necesario que se actualicen tres supuestos: i) que el acto realizado sea contrario a las buenos usos y costumbres en la industria comercio y servicios, ii) que implique una competencia desleal y, iii) que se relacione con la materia que la Ley de la Propiedad Industrial regula. - - - En efecto, el numeral de referencia establece una concurrencia

de supuestos, ya que utiliza una conjunción copulativa, lo que gramaticalmente lleva a concluir que debe ser acumulativa la convergencia de supuestos, por tanto, es necesario que se acrediten todos para que se pueda considerar que se cometió la infracción citada, ya que de lo contrario, si no se actualizan todos ellos no se podrá considerar que la persona inculpada cometió la infracción de referencia. - - - En virtud de lo anterior, en la especie se actualizan los tres requisitos señalados, en virtud de que los registros de dominio www.escolastica.org, www.scholastic.com, www.scholastic.com.mx, www.escolastic,com, www.escolastic.net y www.scholastic.org, por parte de la hoy actora SCHOLASTIC, INC., no puede considerarse como un acto de buena fe, acorde a los buenos usos y costumbres en la industria comercio y servicios en tanto que la marca ESCOLASTICA es una marca registrada para servicios de publicidad y telecomunicaciones como quedó acreditado con la exhibición de los títulos de registro, y dado que, dicho acto si se encuentra relacionado con la materia regulada por la Ley de la Propiedad Industrial, debido a que tanto la Ley de la materia como el Instituto Mexicano de la Propiedad Industrial tienen como objetivo proteger las marcas que se encuentren registradas; ello implica que se actualiza la infracción de referencia, pues en la especie se cumple con los





PODER JUDICIAL DE LA FEDERACIÓN



*tres requisitos, esto es, que el acto realizado por el presunto infractor implica competencia desleal. - - - Asimismo basta con verificar las páginas de internet que fueron revisadas mediante la visita de inspección de fecha 22 de septiembre de 2008 mismas que ya fueron reproducidas con antelación de las cuales se desprende que ofrece servicios de publicidad al señalar las tarifas de los anuncios en línea y que se contacte al equipo de ventas de publicidad, así como anuncios publicitarios dentro de dichas páginas, es por ello que se acredita que está realizando actividades concernientes a publicidad y comunicaciones a través de sus denominaciones de dominio que resultan ser semejantes en grado de confusión con las marcas registradas por la parte hoy tercero interesada. - - - Aunado a lo anterior, el vocablo "escolástica" alguna importancia debe de tener dentro del sector comercial en donde se ofrecen los servicios de publicidad y telecomunicaciones que amparan los registros de marca 671124 ESCOLÁSTICA Y DISEÑO, y 669004 ESCOLÁSTICA Y DISEÑO, pertenecientes a la hoy tercero interesada, debido a que el hoy actor estuvo en la posibilidad legal de constituir sus nombres de dominio con diversos elementos, para que no tuviera una semejanza en grado de confusión fonética con las marcas antes citadas. - - - Ahora bien el hecho de que entre los nombres de dominio y las marcas exista semejanza en*

*grado de confusión, confunde a los usuarios de la Internet, pues el consumidor que conoce a las marcas registradas al verificar que existe un nombre de dominio www.escolastica.org, www.scholastic.com, www.scholastic.com.mx, www.escolastic,com, www.escolastic.net y www.scholastic.org, ocasiona confusión entre el público consumidor, el cual identificaría dicha denominación con las marcas registradas de la hoy tercero interesada. - - - En cuanto hace al <u>inciso e)</u> en el que la parte actora aduce que en el procedimiento administrativo no se demostró que "Scholastic", Inc., preste en México servicios de publicidad o de telecomunicaciones, ya que la aparición de algunos banners publicitarios de empresas de Estados Unidos no implica que algún tercero pague por promocionar en la página de internet de "Scholastic", Inc., determinados productos o servicios, pues en aquella solamente promociona los productos educativos que presta y no los de cualquier tercero que desee pagarle por ofertar sus productos o servicios en la página de internet. - - - En primer lugar de conformidad con el Diccionario de la Real Academia Española, consultado en línea a través de la página de internet http://lema.rae.es/drae/?val=internet, significa Red informática mundial, descentralizada, formada por la conexión directa entre computadoras mediante un protocolo especial de comunicación; asimismo de la página*





D.A. 237/2015.

POCER JUDICIAL DE LA FEDERACIÓN



BÜNAU COLEGIADO
Y ADMINISTRATIVA
CIRCUITO

*http://es.wikipedia.org/wiki/Internet, se desprende que internet es un conjunto descentralizado de redes de comunicación interconectadas que utilizan la familia de protocolos TCP/IP, lo cual garantiza que las redes físicas heterogéneas que la componen funcionen como una red lógica única, de alcance mundial. Sus orígenes se remontan a 1969, cuando se estableció la primera conexión de computadoras, conocida como Arpanet, entre tres universidades en California y una en Utah, Estados Unidos; de acuerdo a las definiciones anteriormente transcritas es evidente que basta que en México o en el mundo se tenga acceso al internet para consultar o acceder a diversas páginas o archivos, como en el caso a nombres de dominio. - - - Por lo que contrario a lo manifestado por la parte actora en el sentido de que en el procedimiento administrativo no se acreditó que SCHOLASTIC, INC., preste en México servicios de publicidad o telecomunicaciones, basta con revisar las páginas de internet que se revisaron durante la visita de inspección de fecha 22 de septiembre de 2008 y que a continuación se reproducen: - - - "(Se insertan imágenes)". - - - De las reproducciones anteriores, se desprende que la parte hoy actora ofrece publicidad dentro de sus páginas de internet a las cuales se puede accesar a través de los nombres de dominio www.escolastica.org, www.scholastic.com, www.scholastic.com.mx, www.escolastic.com,*

*www.escolastic.net y www.scholastic.org, pues se puede observar que en la columna de la izquierda se encuentran varios anuncios de empresas como "SPN" (revista de deportes) y "FORD" (empresa automotriz), que también se comercializan en México, por lo que al mencionar la actora que son empresas de Estados Unidos ello no implica que no se comercialicen en México, por lo que aunado con las primeras páginas que se reprodujeron en páginas anteriores de esta sentencia, en las que se señaló y acreditó que la actora ofrecía servicios de publicidad al ofertar anuncios en su página de internet, en éstas últimas páginas reproducidas se acredita que realiza publicidad de otras empresas que aunque tengan origen estadounidense son conocidas en México y también se comercializan en este país. - - - Por lo anterior resulta infundado el argumento expuesto por la parte actora, toda vez que el internet es una acceso a una red mundial, por lo que cualquier persona en México con acceso a internet puede observar el contenido de sus nombres de dominio que resultan ser semejantes en grado de confusión para el consumidor promedio, en las cuales además de ofertar sus productos, presta servicios de publicidad de otras empresas diversas a la propia. - - - Por último en cuanto al inciso f) en el que manifiesta que la autoridad demandada no justificó por qué los consumidores pueden caer en error o confusión a razón del registro de los*





PODER JUDICIAL DE LA FEDERACIÓN



*dominios de internet y redireccionamiento a la página oficial de "Scholastic", Inc., y tampoco se acreditó ni documentó caso alguno de confusión de consumidores del mercado mexicano. - - - El argumento anterior resulta infundado, toda vez que se señaló con antelación que el hecho de que entre los nombres de dominio y las marcas exista semejanza en grado de confusión, confunde a los usuarios de la Internet, pues el consumidor que conoce a las marcas registradas al verificar que existe un nombre de dominio www.escolastica.org, www.scholastic.com, www.scholastic.com.mx, www.escolastic.com, www.escolastic.net y www.scholastic.org, ocasiona confusión entre el público consumidor, el cual identificaría dicha denominación con las marcas registradas de la hoy tercero interesada, toda vez que actualmente el uso de las computadoras es común entre la población, es decir, no se requiere ser un experto en materia de computación para ingresar a dicha información que se dirige a todos los usuarios de la red; sirve de apoyo a lo antes razonado, la tesis sostenida por esta Sala Especializada en Materia de Propiedad Intelectual, que a continuación se transcribe: - - - VI-TASR-EPI-285 - - - VALORACIÓN DE LA INFORMACIÓN CONTENIDA EN PORTALES DE LA RED MUNDIAL DE TERMINALES ENLAZADAS ENTRE SÍ (INTERNET).- "(Se transcribe)". - - - De lo anteriormente transcrito,*

*resulta que cualquier persona puede accesar al internet, y como se acreditó con anterioridad al existir semejanza en grado de confusión respecto de los nombres de dominio de la hoy actora y los registro de marca de la hoy tercero interesada y que si el objeto del comercio y de la prestación de servicios es que los consumidores adquieran los productos y servicios que ofrecen los comerciantes y proveedores a cambió de una contraprestación, <u>es que resulta confundible para el consumidor promedio o usuario de internet encontrarse ante unos nombres de denominación</u> www.escolastica.org, www.scholastic.com, www.scholastic.com.mx, www.escolastic.com, www.escolastic.net y www.scholastic.org, <u>semejantes en grado de confusión a las marcas 671124 ESCOLÁSTICA Y DISEÑO, y 669004 ESCOLÁSTICA Y DISEÑO.</u> - - - Por cuanto hace a la multa impuesta la parte actora no realiza manifestación alguna, sin embargo es importante precisar que el sistema de protección legal de la Propiedad Industrial, debe proteger los intereses de los titulares de las marcas, además de estar encausado para que el consumidor pueda distinguir en el comercio las marcas y productos que se le ofrecen, a fin de que pueda identificar dicha marca con su titular y, por tanto, con la calidad y prestigio del producto o servicio. - - - Más aún, es de considerarse que se debe garantizar un sistema de protección tanto para los*



CUARTO TRIBU
EN MATERIA A
DEL PRIME



PODER JUDICIAL DE LA FEDERACIÓN

*consumidores de productos y servicios, como para los comerciantes que los ofertan, que les asegure, por una parte, la calidad y prestigio del producto o servicio que adquieren y que éste cuente con las cualidades, componentes e información que les fue proporcionada antes de adquirirlos (tratándose de los consumidores), y por otra, la generación de un ambiente de competencia económica armónica entre los comerciantes, en el que los titulares de la patente, deberán hacer uso de sus propias herramientas mercadológicas y de comercio, y sin incurrir en ninguna de las demás prohibiciones que establece la Ley de la Propiedad Industrial, para publicitar y promocionar sus productos o servicios, destacando las cualidades competitivas de los mismos, evitando dar cabida a aquellos comerciantes que, con el fin de lograr mayores ganancias económicas, basen el éxito de su producto o servicio, en datos o información falsa, que destaquen cualidades o características con que no cuenta la mercancía y haga que se sustraigan en su provecho a la clientela ajena, sin empeñar a cambio sus propios recursos, inventivas o su propia fuerza económica, generándose así, un ambiente de competencia desleal, ya que su conducta lleva la intención de sustraer la clientela del fabricante o comerciante competidor, atrayéndola para sí mismo, y recibiendo indebidamente los beneficios de que*

*disfruta su rival. - - - Por lo que si la Ley de la Propiedad Industrial tiene por objeto prevenir los actos que atenten contra la propiedad industrial o que constituyan competencia desleal, como son el otorgamiento de un registro marcario, lógico es que se proteja también al público consumidor, toda vez que la función de una marca es precisamente la de servir al público para poder identificar un producto o un servicio, por lo que, en ese sentido la autoridad demandada hizo uso de las facultades que cuenta. - - - Establecido lo anterior, de la resolución impugnada se advierte que la autoridad demandada actúo de conformidad con el contenido de los artículos 214 y 220 de la Ley de la Propiedad Industrial, al imponer la sanción correspondiente. - - - Lo anterior es así, ya que de los artículos 214 y 220 de la Ley de la Propiedad Industrial, en la parte que nos interesa, establecen lo siguiente: - - - "ARTICULO 214.* (Se transcribe)". *- - - De los preceptos legales transcritos se advierte que la Ley de la Propiedad Industrial prevé como sanción en caso de comisión de las infracciones previstas en la propia Ley, una multa que puede elevarse hasta el importe de 20,000 días de salario mínimo general vigente en el Distrito Federal. - - - Asimismo, el artículo 220 de la Ley de la Propiedad Industrial establece que para determinar el monto de la sanción deberá tomarse en consideración el carácter intencional de la acción u omisión*





POÇER JUDICIAL DE LA FEDERACIÓN



constitutiva de la infracción, las condiciones económicas del infractor y la gravedad de la infracción, así como el perjuicio ocasionado a los directamente afectados. - - - En este sentido tenemos que al establecer la norma un mínimo y un máximo de días de salario para la fijación de la multa, faculta al Instituto Mexicano de la Propiedad Industrial, para que, atendiendo a su prudente arbitrio determine dentro de los límites mínimo y máximo, la multa que corresponda imponer en cada caso concreto, con base en los elementos objetivos que obren en el expediente, susceptibles de constituir atenuantes o agravantes, teniendo en todo caso, la obligación de fundar y motivar su determinación, de conformidad con el mandato contenido en el artículo 16 de la Constitución Política de los Estados Unidos Mexicanos. - - - Por lo que si la autoridad demandada le impuso como sanción al indebido actuar por la actora, la cantidad de cinco mil días del salario mínimo vigente en el Distrito Federal; como se observa, la autoridad razona debidamente las circunstancias particulares que dieron origen a la conducta ilegal de la infractora, así como la gravedad misma de la infracción y los perjuicios causados tanto al público consumidor como al titular de los registros marcarios 669004 *ESCOLASTICA Y DISEÑO Y 671124 ESCOLASTICA Y DISEÑO*, circunstancias que determinaron el importe de la sanción; misma que a consideración

*de esta Juzgadora resulta debidamente fundada y motivada. - - - Lo anterior, se fundamenta en el criterio V-TASS-144, sustentado por el Pleno de la Sala Superior del Tribunal Federal de Justicia Fiscal y Administrativa, aprobada en sesión de 3 de mayo de 2004, que aplicado por analogía señala: - - - MULTAS IMPUESTAS EN MATERIA DE PROPIEDAD INDUSTRIAL.- REQUISITOS QUE DEBEN CONTENER.- "(Se transcribe)". - - - De lo señalado, se advierte que la autoridad enjuiciada conforme a su prudente arbitrio, y en el ejercicio de la plena autonomía de la que goza para fijar la multa cuando se establece un mínimo y un máximo en la Ley. - - - Asi las cosas, se tiene que la autoridad demandada al momento de emitir la multa tomó debidamente en consideración lo establecido por el artículo 220 de la Ley de la materia, esto es, las condiciones económicas del infractor, la gravedad de la infracción, así como las condiciones económicas del mismo, como se puede ver en la resolución impugnada a fojas 56 vuelta a 64 de los autos, por lo que no puede considerarse de manera alguna que la multa impuesta por la autoridad fue indebidamente fundada y motivada.- - - Es cierto, para la imposición de la sanción de conformidad con lo establecido en el propio artículo 220 de la Ley de la Propiedad Industrial, la autoridad se refiere que tomando en cuenta el carácter intencional con el que actúa, sus condiciones económicas y la*







POCER JUDICIAL DE LA FEDERACIÓN

*gravedad que implica el uso de los nombres de dominio www.escolastica.org, www.scholastic.com, www.scholastic.com.mx, www.escolastic.com, www.escolastic.net y www.scholastic.org, semejantes en grado de confusión de los registros marcarios 669004 ESCOLASTICA Y DISEÑO Y 671124 ESCOLASTICA Y DISEÑO, y teniendo como actividad la comercialización de productos iguales a los que protege la marca registrada, sin el consentimiento expreso de la titular del registro marcario y causando perjuicio a su titular, sobre todo en los renglones económicos y de prestigio. - - - Por lo que, a razón de que el máximo de monto pecuniario facultado por ministerio de ley, es de 20,000 (veinte mil) días de salario mínimo general diario y vigente en el Distrito Federal al día de la comisión ilegal, de donde se podía determinar que la hoy actora cuenta con capacidad económica suficiente para hacer frente a la multa impuesta, y se realiza también a una valoración integral sobre el carácter intencional de la acción u omisión constitutiva de la infracción, de lo que se colige que, la autoridad, contrariamente a lo señalado por la actora razonó debida y suficientemente el carácter intencional de la conducta infractora. - - - Por lo que resultan infundados los argumentos del demandante en el sentido de que al momento de imponer la multa correspondiente la autoridad demandada, no realizó de manera debida la fundamentación y motivación que le sirvió para*

*determinar el monto de la multa, ya que tal como
se advierte a foja 30 de la resolución impugnada y
74 vuelta de los autos, la autoridad demandada
determinó lo siguiente: - - - "(Se transcribe)". - - - Al
respecto, se dice no le asiste la razón al
demandante, pues con sus argumentos no logra
desvirtuar la presunción de legalidad de la
actuación de la autoridad, pues en todo caso la
actora debió aportar elementos probatorios al
juicio en que se actúa a fin de acreditar que
efectivamente su capacidad económica era
diversa de la considerada por la autoridad, lo que
en el caso concreto no aconteció, por lo que
deben desestimarse sus manifestaciones en ese
sentido. - - - Sirve de apoyo a lo anterior la
siguiente tesis: - - - "PRUEBA.- SU CARGA
CUANDO SE HACEN AFIRMACIONES.-* (Se
transcribe)". - - - *En éste orden de ideas es claro
advertir que contrariamente a los argumentos de
la enjuiciante, la resolución impugnada si se
encuentra suficientemente fundada y motivada, ya
que en estricta observancia a lo dispuesto por el
artículo 3, fracción V, de la Ley Federal de
Procedimiento Administrativo, la demandada cita
expresamente los fundamentos legales en que
sustenta la actualización de la infracción a la
propiedad industrial que se le imputa al
demandante, pues como se observa de la
resolución impugnada la autoridad demandada
determinó que la actora se colocaba en los*





PODER JUDICIAL DE LA FEDERACIÓN



*supuestos contemplados por las fracciones I, y IX inciso c), del artículo 213 de la Ley de la Propiedad Industrial; así como también señala las razones particulares y circunstancias especiales que a su juicio sustentan la actualización de dichos supuestos, en tanto considera que el actuar de la actora es grave, toda vez que la conducta desplegada por la infractora atenta de manera franca y abierta contra sus derechos de propiedad industrial, ya que utiliza como nombres de dominio www.escolastica.org, www.scholastic.com, www.scholastic.com.mx, www.escolastic.com, www.escolastic.net y www.scholastic.org, que resulta ser semejante en grado de confusión a los registros marcario 669004 ESCOLASTICA Y DISEÑO Y 671124 ESCOLASTICA Y DISEÑO, aunado a que comercializa productos que amparan la marcan registradas haciendo creer al público consumidor que existe una relación entre la hoy ahora y la tercero interesada. - - - En otras palabras, con su conducta violó lo dispuesto por las fracciones I, y IX inciso c) del artículo 213 de la Ley de la Propiedad Industrial. Por lo que si en el especie quedó acreditado que con su conducta incurrió en violaciones al contenido de dichos preceptos legales, es inconcuso se actualizó dichas infracciones, trayendo como consecuencia que la autoridad tenía la facultad de imponerle la multa que le determinó. - - - Aunado a lo anterior, no debe pasarse por alto que la autoridad*

*demandada cuenta con plena autonomía para fijar el monto que su amplio arbitrio estime justo dentro de los límites señalados en la ley, para lo cual únicamente debe expresar pormenorizadamente los motivos que tenga para fijar dicho monto, situación que si aconteció en la especie, por lo que si dichas consideraciones no son coincidentes con la pretensión de la actora, corresponde a ésta demostrar que dicha valoración fue indebidamente realizada, demostrando que el monto de la multa no corresponde a su capacidad económica; sin embargo, la demandante sólo se limita a formular una serie de aseveraciones sin exponer los razonamientos lógico jurídicos por los cuales demuestre que su capacidad económica no es suficiente para solventar la multa impuesta, ni tampoco exhibe los medios de prueba idóneos que acrediten tal cuestión, por lo que en ese sentido, resulta infundadas sus argumentaciones. - - - Resulta aplicable a lo anterior, la siguiente Jurisprudencia emitida por el Poder Judicial de la Federación, misma que se transcribe a continuación: - - - "Registro No. 231989 - - - Localización: - - - Octava Época - - - Instancia: Tribunales Colegiados de Circuito - - - Fuente: Semanario Judicial de la Federación - - - 1, Segunda Parte-2, Enero a Junio de 1988 - - - Página: 836 - - - Tesis: 1. 2o. A. J/6. - - - Jurisprudencia - - - Materia(s): Administrativa - - -*





PODER JUDICIAL DE LA FEDERACIÓN



*MULTAS. ARBITRIO DE LAS AUTORIDADES PARA IMPONERLAS ENTRE EL MÍNIMO Y EL MÁXIMO PERMITIDO POR LA LEY. DEBE RAZONARSE.* "(Se transcribe)". - - - Cabe precisar que el artículo 213 de la Ley de la Propiedad Industrial establece como infracciones administrativas, entre otras, realizar actos contrarios a los buenos usos y costumbres en la industria, comercio y servicios que impliquen competencia desleal y que se relacionen con la materia que esa ley regula. Por su parte, el numeral 214, fracciones I y II, del ordenamiento mencionado, prevé la sanción correspondiente a las infracciones anotadas, consistente en una multa y, por cada día en que persista la conducta que se estime contraria, una adicional. Por ello, se concluye que las disposiciones referidas son las aplicables al caso en particular, por ende, cuando se cometen actos de competencia desleal derivada del uso de una patente, debe estimarse que se trata de una intención infractora y que, por ello, es dable imponer la sanción de conformidad con la Ley de la materia, en este caso, la Ley de la Propiedad Industrial. - - - Máxime que nuestro máximo Tribunal en la jurisprudencia P./J. 10/95 con el rubro: *"MULTAS FIJAS. LAS LEYES QUE LAS ESTABLECEN SON INCONSTITUCIONALES.", ha establecido que las leyes que prevén multas resultan inconstitucionales, en cuanto no permiten a las autoridades impositoras la posibilidad de*

*fijar su monto, tomando en cuenta la gravedad de la infracción, la capacidad económica del infractor, su reincidencia en la conducta que la motiva y todas aquellas circunstancias que deban tenerse en cuenta para individualizar dicha sanción. - - - También ha considerado que no son fijas las multas cuando en el precepto respectivo se señala un mínimo y un máximo, pues tal circunstancia permite a la autoridad facultada para imponerlas determinar su monto de acuerdo con las circunstancias personales del infractor, que permitan su individualización en cada caso concreto. En congruencia con dichos criterios se colige que el artículo 214, fracción I, de la Ley de la Propiedad Industrial no establece una multa fija pues la autoriza hasta por veinte mil días de salario mínimo general vigente en el Distrito Federal, lo que permite a la autoridad fiscal fijar los parámetros dentro de los cuales podrá aplicar la sanción en particular, es decir, se conceden facultades para individualizar la sanción y, por tanto, los agravios que expresa la actora resultan inoperantes, toda vez que la autoridad demandada sí actuó conforme a derecho. - - - En las relatadas consideraciones, tras haberse agotado el estudio de los argumentos de agravio expuestos por la parte actora a través de su demanda, sin que ninguno de ellos hubiere resultado fundado y suficiente para desvirtuar la presunción de validez que le asiste a la resolución impugnada de*





POER JUDICIAL DE LA FEDERACIÓN

conformidad con el artículo 8º de la Ley Federal de Procedimiento Administrativo, procede se reconozca su validez, de conformidad con el diverso 52, fracción I, de la Ley Federal de Procedimiento Contencioso Administrativa. - - - En virtud de las consideraciones alcanzadas por esta Sala, es evidente que la resolución impugnada se encuentra emitida conforme a derecho; por lo que esta Juzgadora se pronuncia por reconocer la legalidad de la resolución impugnada, al no haber acreditado la parte actora los hechos constitutivos de su acción, de conformidad con el artículo 81, del Código Federal de Procedimientos Civiles de aplicación supletoria. - - - Por lo expuesto y fundado, en términos de lo dispuesto por los artículos 106, de la Ley de Amparo; 49, 50, y 52, fracción I, de la Ley Federal de Procedimiento Contencioso Administrativo se resuelve: - - - I. En cumplimiento a la ejecutoria dictada por el Cuarto Tribunal Colegiado en Materia Administrativa del Primer Circuito en el juicio de amparo D. A. 701/2014, se emite la presente sentencia; - - - II. La parte actora no probó los hechos constitutivos de su pretensión, en consecuencia; - - - III. Se reconoce la validez de la resolución impugnada, al tenor de los motivos y fundamentos lógico jurídicos expuestos en esta sentencia; - - - (…).''

QUINTO.- El quejoso formula en su demanda de amparo los siguientes conceptos de violación:

"PRIMERO. La sentencia de fecha 3 de febrero de 2015 viola en perjuicio de mi representada los derechos reconocidos por los artículos 14, 16 y 17 de la Constitución Política de los Estados Unidos Mexicanos, con relación a los artículos 50 y 51 de la Ley Federal de Procedimiento Contencioso Administrativo, toda vez que la misma _no se encuentra debidamente fundada y motivada,_ violando el derecho de mi representada a la seguridad jurídica, pues _los hechos que motivaron su determinación se realizaron de forma diferente de como fueron apreciados por la responsable,_ por lo que los dispositivos legales aplicados no se actualizaron. - - - En efecto, en el considerando sexto de la sentencia que se reclama, la autoridad responsable supuestamente se dedicó a abordar los argumentos de nulidad hechos valer por mi representada que ilegalmente no fueron analizados en su primera sentencia, _realizando un análisis ahora del todo deficiente y desapegado de la realidad,_ al considerar que mi representada en efecto incurrió en actos de competencia desleal al registrar y redireccionar hacia su página principal varios nombres de dominio, en particular, escolastica.org, escolastic.com, escolastic.net y escolastic.org, entre otros. - - - Como se desprende de la demanda de nulidad correspondiente y como se verifica en la sentencia de amparo dictada en el expediente D.A. 701/2014



 
POER JUDICIAL DE LA FEDERACIÓN



*que supuestamente cumplimentó la responsable, mi representada argumentó en esencia que es ilegal la declaración de infracción por competencia desleal realizada por la autoridad administrativa, toda vez que en la especie no se colma el requisito básico de la causal de infracción, es decir, que las partes tengan el carácter de competidores en el mercado mexicano. - - - Al realizar el análisis del argumento referido, la sala responsable estableció a foja 27 de su sentencia que uno de los requisitos para que se actualice la competencia desleal es precisamente que existan dos competidores que concurran en el mercado en igualdad de circunstancias, ofreciendo en venta productos o servicios de la misma clase o especie. - - - El argumento expresado por mi mandante en este sentido fue calificado por la responsable como infundado, toda vez que en su concepto, del acta de inspección ocular levantada por la autoridad administrativa el 22 de septiembre de 2008, sobre los sitios localizados en los nombres de dominio escolastica.org; scholastic.com, scholastic.com.mx, escolastic.com, escolastic.net y escolastic.org; se desprende que mi representada presta servicios de publicidad, ya que en la página de Internet a la que dichas páginas redirigen se aprecia que mi representada ofrece anuncios en linea para la revista CoachPlus, con lo que se acredita la competencia desleal entre mi mandante y la sociedad tercero interesada Corporación México*

*Escolástica. - - - Asimismo, en las páginas 42 a 44
de la sentencia que se reclama, la sala
responsable infame e ignorantemente consideró
que la aparición de banners publicitarios en la
página internacional de mi representada por parte
de empresas extranjeras, como ESPN y FORD
acredita la prestación de servicios de publicidad,
toda vez que dichas empresas "son conocidas en
México y también se comercializan en este país". -
- - Además, a foja 37 de su sentencia la sala
responsable afirma que en los nombres de
dominio que mi mandante registró se prestan
servicios de publicidad y telecomunicaciones, <u>lo
que es desde luego falso y hasta inmotivado en
cuanto a los supuestos servicios de
telecomunicaciones que aduce la responsable mi
mandante también presta, pues nada estableció en
su sentencia al respecto ni dio las razones de tan
incorrecta consideración,</u> siendo que mi
representada argumentó desde su escrito inicial
que <u>ella no prestaba en México servicio alguno de
publicidad ni de telecomunicaciones,</u> por lo que en
la realidad del mercado la empresa quejosa y la
tercero interesada de este juicio <u>NO compiten en
México.</u> - - - Son incorrectas las consideraciones e
ilógicos los razonamientos de la autoridad
responsable, toda vez que contrario a lo que
aduce, mi representada <u>no presta ni ha prestado
en México servicios de publicidad ni de
telecomunicaciones, siendo que su actividad</u>*





PODER JUDICIAL DE LA FEDERACIÓN



*comercial en nuestro país se centra en la prestación de servicios educativos y en la comercialización de libros y otros materiales impresos. - - - Sorprende la suprema ignorancia que la autoridad responsable muestra en temas básicos en materia de propiedad intelectual, como la determinación sobre el uso efectivo de una marca en México con relación a determinados productos o servicios, siendo que la imperdonable ignorancia de la autoridad que se espera sea especializada en temas de propiedad intelectual y competencia desleal está causando un ultrajante perjuicio a la empresa que represento, la que se distingue como una empresa ética y respetuosa de los derechos de propiedad intelectual, dedicada a la educación a la edición y comercialización de libros y publicaciones. - - Es evidente que la autoridad responsable no toma en cuenta que la página de internet oficial de mi representada tiene carácter global, tan es así que las capturas de pantalla que realiza en su sentencia, son hechas sobre la traducción realizada por perito autorizado del idioma inglés al español, lo que demuestra que dicha página de Internet no está dirigida al público consumidor mexicano, pues la misma en origen se encontraba disponible únicamente en idioma inglés. - - - Asimismo, ni la autoridad administrativa de origen ni mucho menos la responsable hacen referencia al contenido de la página de internet localizada en el nombre de*

*dominio con terminación .mx, siendo éste precisamente el que pudiera encontrarse dirigido al público consumidor mexicano, pues como se observa del contenido de la sentencia reclamada la Sala Especializada sólo analizó el contenido de la página internacional de mi representada que se encuentra de manera oficial en www.scholastic.com, así como se encontraba redirigida en algunos de los nombres de dominio de los que la tercero interesada se dolió, como escolastica.org. - - - Por otro lado, el hecho de que exista información e hipervínculos que se refieren a la posible contratación de publicidad en la revista CoachPlus, que era comercializada por Scholastic en Estados Unidos, ello no significa que un consumidor mexicano que quisiera contratar servicios de publicidad pudiera hacerlo como ligera, ignorante e inmotivadamente afirma la responsable, pues mi representada no comercializaba en México dicha revista ni el público consumidor mexicano podía contratar dichos servicios de publicidad, siendo que la misma estaba destinada únicamente a consumidores estadounidenses. - - - A pesar de que la Sala responsable argumente sin el menor razonamiento que las marcas ESPN y FORD son conocidas y operan en México, ello no prueba en lo más mínimo que los consumidores de servicios de publicidad con residencia en nuestro país podían contratar publicidad en el sitio de internet*





PODER JUDICIAL DE LA FEDERACIÓN



*internacional de mi representada, lo que se confirma al considerar que de las empresas anunciadas, ninguna de ellas es mexicana. - - - Es de vital importancia entender que el consumidor de servicios de publicidad no es el público al que dicha publicidad está dirigida, sino la persona que busca y contrata el servicio de publicidad, que es precisamente la persona física o moral que desea anunciarse, por lo que el argumento de la responsable en el sentido de que las empresas que usan las marcas ESPN y FORD sean conocidas y operen en México es aberrante e insuficiente para poder considerar que dichos servicios son prestados por mi representada en México, pues la contratación de los mismos fue realizada en territorio extranjero, considerando además que están anunciados en la página Internacional de mi representada. - - - En otras palabras, no debe soslayarse que a pesar de que miles de empresas tienen páginas de Internet a las que se puede acceder desde cualquier parte del mundo, incluyendo México, ello no implica la prestación de servicios o la comercialización de productos en nuestro país. - - - Es aplicable lo dispuesto por el artículo 62 del Reglamento de la Ley de la Propiedad Industrial que establece que el uso de una marca se entenderá cuando los productos o servicios que distingue han sido puestos en el comercio en el mercado en el país, en la cantidad y modo que corresponde a los usos*

*y costumbres en el comercio. - - - De lo anterior se desprende que existirá prestación de servicios de publicidad en México, única y exclusivamente cuando los consumidores mexicanos puedan contratar servicios que les permitan publicitar sus propios productos o servicios, pero no cuando se puedan simplemente observar en Internet productos o servicios publicitados por terceros para que sean adquiridos por consumidores mexicanos. - - - Esto que constituye un concepto básico del derecho marcario es sorprendentemente ignorado o mal entendido por la autoridad responsable, lo que resulta ultrajante, ya que considera de forma por demás errónea que existe prestación de un servicio de publicidad en México por parte de mi representada, cuando lo único que existe en todo caso es publicidad de productos o servicios de terceros extranjeros, en una página de Internet dirigida al público consumidor de los Estados Unidos y sin que exista posibilidad de que los consumidores mexicanos puedan contratar servicios de publicidad con mi mandante en territorio nacional. - - - Se insiste en que el resultado de la inspección ocular en la que basaron su ilegal resolución tanto el Instituto Mexicano de la Propiedad Industrial, como la autoridad responsable, adolece de que la autoridad se limitó a revisar de manera por demás ligera una página de Internet en idioma inglés, encontrando supuestamente una sección en dicha*







'OCER JUDICIAL DE LA FEDERACIÓN

página en la que supuestamente se podían contratar servicios de publicidad, sin siquiera corroborar si en efecto dichos servicios podían ser contratados por los consumidores mexicanos. - - - Sin embargo, la tercero interesada mañosamente sorprendió al Instituto Mexicano de la Propiedad Industrial y la Sala responsable no alcanzó a dilucidar lo que mi mandante oportunamente trajo a su atención, en el sentido de que la página de Internet visitada NO le permite a consumidores mexicanos contratar servicios de publicidad a través de ella, por lo que resulta evidente que mi representada <u>NO presta servicios de publicidad en México</u>. - - - Además, debe resaltarse que la empresa solicitante de la infracción, hoy tercero interesada, era quien en todo caso estaba obligada a probar que los servicios de publicidad que mi representada supuestamente prestaba se encontraban disponibles para su consumo (contratación) en México, lo que no sucedió, pues como se aprecia de las constancias que integran el expediente administrativo de origen ninguna prueba permite sostener o presumir tal afirmación, insistiendo en que la simple liga o información sobre tarifas y anuncios posibles en la revista CoachPlus no prueba ni sugiere siquiera que dichos servicios podían ser contratados desde México, con independencia de que el consumidor mexicano pudiera acceder a la página correspondiente

*desde Internet, lo que evidentemente es diferente. - - - De ahí que el razonamiento de la Sala responsable sea infundado, pues al no haberse acreditado que mi representada presta efectivamente servicios de publicidad en territorio mexicano, es evidente que no existe competencia entre ella y la persona moral Corporación México Escolástica, la que ha registrado sus marcas para servicios de publicidad y telecomunicaciones, éste último servicio que mi representada tampoco presta y sobre el que la Sala responsable omitió por completo pronunciarse, únicamente afirmando en algunas partes de su sentencia que sí lo hace, por supuesto sin la menor motivación o razonamiento de su tan infundado dicho. - - - Por lo tanto, si mi representada y la empresa tercero interesada no prestan servicios iguales, es evidente que no se entabla una relación de competencia entre ellas, donde los actos de una pudieran afectar comercialmente a la otra por la desviación de clientela; lo que trae como inevitable consecuencia que dicha inexistente competencia pueda ser calificada y sancionada como desleal. - - - Así la cosas, no se acreditaron a cabalidad los extremos de las hipótesis de infracción contempladas en las fracciones I y IX inciso c) del artículo 213 de la Ley de la Propiedad Industrial, al no haberse acreditado la relación de competencia entre las partes, por lo que la Sala responsable debió haber declarado la nulidad de*





D.A. 237/2015.

101

PODER JUDICIAL DE LA FEDERACIÓN



*la resolución administrativa impugnada para el efecto de que el Instituto Mexicano de la Propiedad Industrial emitiera nueva resolución en la que negara la comisión de las infracciones solicitadas al no haberse acreditado los extremos de su causal. - - - Resulta igualmente ilegal y ultrajante que la autoridad responsable haya llegado a conclusiones como las que expresa a fojas 36 y 37 de la sentencia reclamada, donde gratuitamente expresó que mi mandante causa confusión e induce al público consumidor a error o engaño, "obteniendo así ventajas indebidas y sustrayendo, infringiendo y explotando el derecho de otro competidor", o refiriendo que mi representada "se aprovecha de la imagen y reputación de las marcas de la hoy tercero interesada". - - - Como ese Tribunal podrá apreciar, es evidente que NO existe error o engaño alguno que mi representada induzca, siendo que entre mi mandante y la hoy tercero interesada NO existe relación de competencia económica, por lo que no puede haber engaño o error en el consumidor, ni existe derecho alguno del cual sea titular la tercero interesada que mi mandante haya sustraído, infringido o explotado, cuando es evidente que lo único que mi mandante ha hecho, es registrar como nombre de dominio diversas palabras parecidas a la palabra SCHOLASTIC, así como su traducción al español ESCOLÁSTICA, siendo además que la tercero interesada ni*

siquiera cuenta con exclusividad sobre dicha palabra de forma aislada, pues los registros marcarios de los que es titular incluyen un diseño, resultando del todo falso que mi mandante se haya aprovechado de la imagen y reputación de las marcas de la hoy tercero interesada, cuando ni siquiera concurren en el mismo segmento de mercado en éste país. - - - Al no haber declarado la nulidad de la resolución impugnada y por el contrario, basar su determinación en afirmaciones y razonamientos que no demuestran lo que pretende, es evidente que la Sala responsable violó en perjuicio de mi representada su derecho a la seguridad jurídica y debida impartición de justicia, así como su garantía de legalidad. - - - Por todo lo anterior, se solicita a ese Tribunal Colegiado declare fundado el presente concepto de violación, otorgando el Amparo y Protección de la Justicia de la Unión a mi representada para el efecto de que la Sala responsable deje sin efectos el acto reclamado y emita otro en el que realizando un correcto estudio de las conceptos de impugnación hechos valer ante ella, declare la nulidad de la resolución administrativa impugnada para que se dicte otra en la que se nieguen las infracciones administrativas acusadas por la hoy tercero interesada en contra de mi representada. - - - SEGUNDO. La sentencia de fecha 3 de enero de 2015 es de igual forma violatoria de los derechos reconocidos por los artículos 14, 16 y 17 de la





OLER JUDICIAL DE LA FEDERACIÓN



*Constitución Política de los Estados Unidos Mexicanos para todas las personas, con relación a los artículos 50 y 51 de la Ley Federal de Procedimiento Contencioso Administrativo, toda vez que la misma no se encuentra debidamente fundada y motivada, además de que carece de congruencia al no abordar, de nueva cuenta, uno de los argumentos hechos valer por mi representada en la demanda de nulidad respectiva, violando el derecho de mi representada a la seguridad jurídica y a la debida impartición de justicia, pues los hechos que motivaron su determinación se realizaron de forma diferente a como fueron apreciados por la responsable, por lo que los dispositivos legales aplicados no se actualizaron, además de que la sentencia de la Sala no fue congruente con lo expuesto en la demanda de nulidad presentada ante ella. - - - En efecto, otro de los argumentos medulares que mi representada hizo valer en sus conceptos de violación segundo y tercero de la demanda de nulidad interpuesta ante la Responsable, era el consistente en que mi representada no había incurrido en actos que pudieren calificarse de contrarios a los buenos usos y costumbres en la industria, comercio y servicios que impliquen competencia desleal, toda vez que el registro de nombres de dominio con denominaciones parecidas a su marca registrada, SCHOLASTIC, no constituye un acto contrario a los buenos usos y*

*costumbres en el comercio. - - - Lo anterior se argumentó indicando que mi representada había registrado nombres de dominios de protección, que eran parecidos a sus propias marcas registradas bajo los números 493651, 487969, 493652 y 487344 es decir, SCHOLASTIC, por lo que mi representada los registró de buena fe al amparo de sus propias marcas registradas, acto que no es de forma alguna contrario a los buenos usos y costumbres en la industria, comercio y servicios, o contrario a los usos honestos en materia industrial y comercial, como es definida la competencia desleal en la Ley de la Propiedad Industrial y en el Convenio de Paris para la Protección de la Propiedad Industrial. - - - Además se insiste en que la sociedad tercero interesada no posee exclusividad respecto de la palabra ESCOLASTICA, la que resulta ser la traducción al idioma español de la marca registrada de mi mandante, además de ser un concepto genérico en cuanto a servicios de educación se refiere, como los que presta mi representada. Asimismo, se insiste en que los registros de la tercero amparan la marca ESCOLASTICA Y DISEÑO, por lo que no puede reconocérsele a ésta exclusividad sobre la palabra ESCOLASTICA de forma aislada, máxime que esta palabra también corresponde a la traducción al español de la marca de mi mandante, por lo que en todo caso la empresa quejosa se encontraba también en todo su derecho de*





PODER JUDICIAL DE LA FEDERACIÓN

*registrar nombres de dominio que incluyeran la palabra ESCOLASTICA o cualquier otra semejante a ella o a la marca SCHOLASTIC. - - - No obstante lo anterior, la Sala responsable no consideró en lo más mínimo que mi representada contaba con los registros marcarios arriba precisados, al amparo de los cuales había registrado como nombres de dominio denominaciones parecidas como dominios de protección, lo que no se molestó siquiera en mencionar a lo largo de la sentencia reclamada, tratando a mi representada como si no tuviera derecho constituido alguno sobre la denominación Scholastic, hasta afirmando absurdamente que la palabra ESCOLASTICA es "semejante en grado de confusión" a los nombres de dominio escolastica.org; scholastic.com; scholastic.com.mx; escolastica.com; escolastic.net; scholastic.org; como se desprende de las fojas 35 y 36 de la sentencia que se reclama, sin tomar en la menor cuenta que dichos nombres también son "semejantes en grado de confusión" como incorrectamente califica la Sala, a las marcas de mi representada, por lo que en todo caso tiene el mismo derecho que la hoy tercero interesada para registrarlos como propios. - - - Además de que la teoría de semejanza en grado de confusión no es aplicable al caso que nos ocupa, en virtud de que la naturaleza de un nombre de dominio no es directamente equiparable con la de una marca; por lo que la "semejanza en grado de confusión" que*

*pueda existir entre ellas no es requisito ni consideración para declarar una posible infracción por competencia desleal. - - - Independientemente de lo anterior, resulta un hecho notorio que diversas empresas, siendo Google la más emblemática de ellas, registran diversos nombres de dominio parecidos a su marca principal, con el objeto de impedir que terceros registren denominaciones parecidas con el ánimo de beneficiarse del tráfico que dichos nombres puedan generar por error mecanográfico del usuario al intentar acceder a la página oficial y para no perder dicho tráfico como consecuencia de un error o desconocimiento por parte del usuario de la correcta escritura del nombre de dominio donde se aloje la página oficial. - - - Para demostrar lo anterior, basta que esos Magistrados intenten acceder a dominios como gogle.com; gooogle.com; google.com o goolge.com para que dichas* (sic) *nombres de dominio redirijan al sitio principal del insuperable buscador: google.com - - - La misma situación fue realizada por mi representada al registrar los nombres de dominio de los que se duele la parte tercero interesada, lo que NO constituye un acto contrario a los buenos usos y costumbres en el mercado ni deshonesto de forma alguna, sino que por el contrario es una práctica común en Internet, como también puede ser verificado con los sitios de hotmail.com; paipal.com, entre muchos otros. - - - Lo anterior*





POCER JUDICIAL DE LA FEDERACIÓN



*fue argumentado ante la responsable manifestando que mi representada era titular de diversos registros marcarios para la marca SCHOLASTIC, además de que las (sic) nombres de dominio registrados por mi mandante como escolastica.com; escolastic.net; escolastic.org, tenían precisamente como propósito no perder el tráfico de usuarios de Internet que quisieran acceder a la página de mi representada pero que hubieran errado en la forma de escribirlo, contemplado además a los usuarios de habla hispana que pudieran traducir la marca de mi mandante. - - - Además, como se ha argumentado en el concepto de violación anterior, mi representada no tenía el menor ánimo de afectar la actividad comercial de la empresa tercero interesada, pues ni siquiera constituye su competencia en México, pues ambas empresas prestan servicios distintos, por lo que no concurren de forma alguna en el mercado mexicano. - - - Sin que sea óbice que si la empresa tercero interesada reclama que mi representada registró como nombres de dominio denominaciones parecidas a sus marcas registradas lo que lesiona sus derechos, el mismo derecho tiene mi representada entonces a registrar nombres de dominios que se parezcan a sus marcas registradas, como SCHOLASTIC, con el ánimo de impedir que algún tercero como Corporación México Escolástica, las registrara con*

*el afán de competir deslealmente en el mercado, si eso fuera cierto. - - - Así las cosas, como se argumentó en la demanda de nulidad respectiva, es evidente que mi representada no incurrió en competencia desleal en contra de la empresa tercero interesada, pues además de que no compiten en el mercado mexicano, mi representada NO incurrió en actos contrarios a los buenos usos y costumbres en el comercio o en actos deshonestos, pues registró como nombres de dominio denominaciones parecidas a sus propias marcas registradas lo que es un acto honesto y conforme con los usos y costumbres en el comercio. - - - Es por lo anterior, que mi representada solicita a la Justicia Federal intervenga en contra de la Sala responsable, concediendo su Amparo y Protección para el efecto de que la Sala Especializada en Materia de Propiedad Intelectual deje sin efectos la sentencia reclamada y emita otra en la que aborde correctamente los argumentos de nulidad bajo los lineamientos especificados en esta demanda, y con base en ellos declare la nulidad de la resolución administrativa para el efecto de que se nieguen, conforme a derecho, las infracciones administrativas solicitadas."*



**SEXTO.-** Precisado lo anterior, los conceptos de violación son **infundados** en una parte, e **inoperantes** en otra, en atención a las siguientes consideraciones:


OCER JUDICIAL DE LA FEDERACIÓN

En primer término, para analizar dichos conceptos de violación, este tribunal colegiado estima necesario contextualizar brevemente las actuaciones que dieron origen al presente juicio de amparo.

1.  Por resolución de dieciséis de diciembre de dos mil diez, la Subdirectora Divisional de Prevención de la Competencia Desleal del IMPI, determinó que Scholastic Inc, incurrió en las infracciones administrativas previstas en las fracciones I y IX, inciso c), del artículo 213 de la Ley de la Propiedad Industrial (en adelante LPI), toda vez que registró diversos nombres de dominio y que están direccionados a la página oficial Scholastic.com., los cuales reproducen en su totalidad la denominación protegida por los registros marcarios 669004 y 671124 , ambos de Escolástica y diseño.



Además se acreditó que en dicha página se prestan y ofrecen servicios que coinciden con los que brinda Corporación México Escolástica, S.A. de C.V. y que pertenecen a la clase 35 y 38 del clasificador internacional; lo anterior con el fin de mermar la posibilidad de que los usuarios y consumidores que usan la internet encuentren o ingresen a la página oficial de su contraparte al direccionarlos a la página oficial de la infraccionada.

2.  Inconforme con la anterior determinación, la infraccionada promovió juicio contencioso administrativo, del que correspondió conocer a la Sala Especializada en Materia de Propiedad Intelectual, se registró con el número de

expediente 533/11-EPI-01-4, y seguidos los trámites, el once de julio de dos mil catorce[2] reconoció la validez de la resolución impugnada.

3.    En desacuerdo, la actora promovió juicio de amparo, del que por razón de turno, correspondió conocer a este tribunal colegiado, se registró con el número de expediente D.A. 701/2014, y en auxilio de sus labores, se remitió al Octavo Tribunal Colegiado de Circuito del Centro Auxiliar de la Tercera Región, con sede en Guadalajara, Jalisco, se registró en su índice con el número D.A.989/2014, y en sesión plenaria de nueve de enero de dos mil quince[3] concedió el amparo para el siguiente efecto:

> "a) Reiterar las consideraciones que no son materia de litis en el presente juicio de amparo.
> b) Analizar nuevamente los conceptos de impugnación segundo y tercero de la demanda de nulidad, pero esta vez deberá dar respuesta a cada uno de los planteamientos expuestos en ellos y que quedaron sintetizados en esta sentencia, bajo los incisos del a) al f), lo que deberá hacer con plenitud de jurisdicción"

4.    En cumplimiento a la anterior ejecutoria, la sala especializada emitió resolución el tres de febrero de dos mil quince[4], en la que nuevamente reconoció la validez de la resolución impugnada.

Ahora bien, una vez contextualizado el presente asunto, la quejosa manifiesta que la sala no motiva porque considera

---

[2] Fojas 641 a 663
[3] Fojas 689 a 708.
[4] Fojas 712 a 740.


PODER JUDICIAL DE LA FEDERACIÓN

que la actora se dedica al servicio de publicidad.

Es **infundado** el anterior argumento, toda vez que contrariamente a lo señalado por la quejosa, la sala no incurrió en tal omisión formal, toda vez que de la sentencia de nulidad se advierte que manifestó que las actividades realizadas en sus denominaciones de dominio, comprenden las de publicidad, pues en ellas ofreció anuncios en línea, tarifas de anuncios en línea, ofreció el contacto con el equipo de publicidad y la comercialización de CoachPlus, de conformidad con lo advertido del acta de la visita de inspección a las siguientes direcciones de internet: www.escolastica.org, www.scholastic.com, www.scholastic.com.mx, www.escolastic.com, www.escolastic.net y www.scholastic.org. Además, consideró que dichas actividades son diversas a las que protegen sus marcas.



Lo que se corrobora de la transcripción siguiente:

"(….) El acta de la visita de inspección a las siguientes direcciones de internet: www.escolastica.org, www.scholastic.com, www.scholastic.com.mx, www.escolastic.com, www.escolastic.net y www.scholastic.org, acta circunstanciada de fecha 22 de septiembre de 2008, que fue levantada por el personal del Instituto Mexicano de la Propiedad Industrial, se desprende lo siguiente: (…) De las anteriores reproducciones de las fojas 725 a 729 del expediente administrativo P.C. 115/2008(I-23) 1258, que obra en un anexo al presente juicio de nulidad se desprende que la parte actora en sus denominaciones de dominio **ofrece anuncios en línea, tarifas de anuncios en línea, ofrece el contacto con el equipo de publicidad, la comercialización de CoachPlus y anunciarse, actividades que comprenden la publicidad y** comercialización que protegen las marcas 671124

ESCOLÁSTICA Y DISEÑO, y 669004 ESCOLÁSTICA
Y DISEÑO de las cuales es titular CORPORACIÓN
MÉXICO ESCOLÁSTICA, por lo que contrario a lo
manifestado por la parte actora si se acredita la
competencia desleal al ofrecer a través de sus
nombres de dominio servicios de publicidad y de
telecomunicaciones, como se acreditó con antelación
con la reproducción de las páginas de internet.



'CDER JUDICIAL DE LA FEDERACIÓN







**SCHOLASTIC**   Maestros   Padres   Niños   Más   Bienvenido a Scholastic.com   Ingresar   Tienda   Mi cuenta

BÚSQUEDA

**Coach**
**AND ATHLETIC DIRECTOR**

PÁGINA PRINCIPAL DE LA REVISTA COACH

[Recuadro en el margen izquierdo que se lee:]
**Info!**
**GRATUITA de nuestros patrocinadores**
Conozca más
[Recuadro en el margen izquierdo que se lee:]
**EL ENTRENADOR DE TRES CUARTOS DE SIGLO**
[Logotipo]
CONOZCA MÁS

Tarifas de anuncios - En línea
Tarifas de anuncios para el periodo 2008-2009

**Laterales**

| | Un mes | Tres meses | Seis meses | Doce meses |
|---|---|---|---|---|
| 125 x 125 | $800 | $1,620 | $2,900 | $5,200 |
| 120 x 240 | $1,000 | $2,700 | $4,800 | $8,600 |

*Producto especial en gris: $1,500 incluyendo el logotipo, la descripción y el anuncio/vínculo.

Sitio Web Coach AD.com Tamaño Hielo

| | Un mes | Tres meses | Seis meses | Doce meses |
|---|---|---|---|---|
| 210 x 125 – rotativo | $880 | $2,000 | $3,500 | $6,000 |
| 210 x 250 rotativo | $1,000 | $2,500 | $4,000 | $6,800 |
| 160 x 600 Página principal | $1,250 | $3,000 | $4,580 | $7,000 |

[Logotipo de POWERLINE ONLINE]
Patrocinador de videos exclusivos de Powerline Online*

| | Un mes | Tres meses | Seis meses |
|---|---|---|---|
| | $1,100 | $2,800 | $4,500 |

[Logotipo de Gridiron Online]
Patrocinador de videos exclusivos de Gridiron Online*

| | Un mes | Tres meses | Seis meses |
|---|---|---|---|
| | $900 | $2,400 | $4,200 |

* incluye titular y logotipo de 210 x 120
*Próximamente: Gamespeed Online, Diamond Online, Baseline Online, etc.

Página principal de publicidad
Tarifas de anuncios - Impresas
Especificaciones de los anuncios
Calendario editorial (pdf)
Declaración de auditoría de BPA (pdf)
Contacte a nuestro equipo de ventas de publicidad

Sucursales    Comercialización de Coach Plus    Calendario de convenciones    Anúnciese    Contactar a la revista Coach
Escribir para la revista Coach    Guía de compras    RFP

**POLÍTICA DE PRIVACIDAD**    Acerca de Scholastic    Carreras    Términos de Uso    Relaciones con los inversionistas    Scholastic.com Inicio    Internacional    Servicio al Cliente    Scholastic en Español

®  y © 2008 – 1996 Scholastic Inc. Todos los derechos reservados.

[Dominio:]
http://www.cscholastic.net/coach/ad_rates_online.htm

[Sello oficial ilegible — Poder Judicial de la Federación, Tribunal Superior #2, Sexto Circuito, Cédula Profesional No. 4561820]

22/09/2008





D.A. 237/2015.

108

59

PODER JUDICIAL DE LA FEDERACIÓN



[Alto de la página]
Scholastic | Coach and Athletic Directors | Especificaciones de los anuncios en línea

Página 1 de 1

SCHOLASTIC   Maestros   Padres   Niños   Más   Bienvenido a Scholastic.com   Ingresar   Tienda   Mi cuenta

[Logotipo de Scholastic]

**Coach**
**AND ATHLETIC DIRECTOR**

PÁGINA PRINCIPAL DE LA REVISTA COACH

[Imagen]

Información rápida
GRATUITA de nuestros
patrocinadores

Consejos más

EL ENTRENADOR DE TRES
CUARTOS DE SIGLO

[Logotipo]

CONOZCA MÁS

Tarifas de anuncios – En línea

Tarifas de anuncios para el período 2008-2009

Letreros

| | Un mes | Tres meses | Seis meses | Doce meses |
|---|---|---|---|---|
| 125 x 125 | $600 | $1,620 | $2,900 | $5,200 |
| 120 x 240 | $1,000 | $2,700 | $4,600 | $8,600 |

*Producto especial del mes: $1,500 incluyendo el logotipo, la descripción y el hipervínculo.

Sitio Web Coachad.com
Tamaño titular

| | Un mes | Tres meses | Seis meses | Doce meses |
|---|---|---|---|---|
| 210 x 120 – rotativo | $400 | $2,000 | $3,500 | $6,000 |
| 210 x 250 – rotativo | $1,000 | $2,500 | $4,000 | $6,800 |
| 160 x 600 Página principal | $1,250 | $3,000 | $4,580 | $7,000 |

| [Logotipo de POWERLINE ONLINE] Patrocinador de videos evolutivos de Powerline Online* | Un mes $1,100 | Tres meses $2,800 | Seis meses $4,500 |
|---|---|---|---|

| [Logotipo de Gráficos Online] Patrocinador de videos exclusivos de Gráficos Online* | Un mes $900 | Tres meses $2,400 | Seis meses $4,200 |
|---|---|---|---|

* Incluye titular y logotipo de 210 x 120
* Próximamente: Greenwood Online, Diamond Online, Baseline Online, etc.

Página principal de publicidad
Tarifas de anuncios impresos
Especificaciones de los anuncios
Calendario editorial (pdf)
Declaración de auditoría de BPA (pdf)
Contacte a nuestro equipo de ventas de publicidad

| Inscríbete | Comercialización de productos | Calendario de convenciones | Anúnciate |
|---|---|---|---|
| | Clínica para la revista Coach | Guía de compras | RSS |

Contacte a la revista Coach

POLÍTICA DE
Acerca de Scholastic

Trabajo
Carrera

Términos de Uso
Relaciones con los inversionistas

Scholastic
Internacional

Sitio
Servicio al Cliente
Scholastic en Español

™ ® y © 2008 – 1996 Scholastic   Todos los derechos reservados.

[Enlace]
http://www.escolastica.org/coach/ad_rates_online.htm

22/09/2008

[sello] Lic. Lidia López López, PERITO TRADUCTOR DEL TRIBUNAL SUPERIOR DE JUSTICIA DEL DISTRITO FEDERAL, Cédula Profesional No. 0561820

COLEGIADO
MINISTRATIVA
CIRCUITO

D.A. 237/2015.

60





(…) En cuanto hace al inciso c), en el que medularmente aduce que se omitió analizar si en realidad la hoy actora presta servicios de publicidad o telecomunicaciones; es preciso reproducir lo estudiado en el inciso a) por lo que hace a la documental consistente en el acta de la visita de inspección a las siguientes direcciones de Internet: www.escolastica.org, www.scholastic.com,


*www.scholastic.com.mx,* *www.escolastic,com,*
*www.escolastic.net* *y* *www.scholastic.org,* *acta*
*circunstanciada de fecha 22 de septiembre de 2008,*
*que fue levantada por el personal del Instituto*
*Mexicano de la Propiedad Industrial, y de la*
*reproducción que de las mismas se hizo, ya que de*
*las mismas se desprende que efectivamente la parte*
*actora dentro de sus nombres de dominio que resultan*
*ser semejantes en grado de confusión con los*
*registros marcarios de la hoy tercero interesada,*
*realiza actos de publicidad al ofrecer anuncios en*
*línea diversos a los productos que protegen sus*
*marcas registradas."*

Tampoco asiste razón a la quejosa al esgrimir que la
sala omitió estudió nuevamente uno de los argumentos hechos
valer en la demanda de nulidad, consistente en que si bien
registró nombres de dominio parecidos a la marca de la tercera
perjudicada, lo hizo de buena fe, al amparo de sus propias
marcas, pues es una práctica común en internet realizar
dominios de "protección" que redireccionan con el propósito de
no perder a posibles clientes que quieran acceder a una página
electrónica pero que hubieran errado en la forma de escribirlo,
por lo que no tenía el ánimo de afectar a la tercera perjudicada
pues no constituye su competencia en México.



Es **infundado** dicho argumento, toda vez que la sala dio
respuesta a dichos argumentos, como se advierte a fojas 39 a
41, pues expuso que los registros de dominio www.escolastica.org,
www.scholastic.com, www.scholastic.com.mx, www.escolastic,com,
www.escolastic.net y www.scholastic.org, por parte de la hoy actora
SCHOLASTIC, INC., **no puede considerarse como un acto**
**de buena fe**, acorde a los buenos usos y costumbres en la
industria comercio y servicios, porque se actualizó la infracción

administrativa contenida en el artículo 213, fracción I, de la LPI, en virtud de que la marca Escolástica es una marca registrada para servicios de publicidad de conformidad con los títulos marcarios 671124 y 669004, y se acreditó que la ahora quejosa Scholastic, Inc. realizó en su página electrónica actividades de publicidad; y que los nombres de dominio y las marcas son semejantes en grado de confusión fonética, pues confunden a los consumidores, ya que se identificaría la denominación de la página con la marca de la tercero perjudicada.

Por otra parte, la quejosa esgrime en el primer concepto que entre la ahora quejosa y la tercera perjudicada no existe una relación de competencia porque no prestan los mismos servicios, toda vez que la actividad comercial de la primera es la prestación de servicios y comercialización de libros y otros materiales impresos, y que un nombre de dominio no es igual a una marca, por lo que no constituye un requisito para actualizar la infracción marcaria.



Es **inoperante** el anterior concepto de violación pues constituye una reiteración de los conceptos de nulidad de los cuales la sala les dio respuesta en su segunda sentencia de nulidad, en acatamiento a lo ordenado en la ejecutoria del amparo directo número D.A.989/2014, en el que se obligó a la sala a pronunciarse, entre otros argumentos, de los resumidos en los inciso a) y b), como se advierte en seguida:

> *"a) Que no es posible determinar que existieron actos de competencia desleal porque "Scholastic", Inc., no compite comercialmente con "Corporación México Escolástica", sociedad anónima de capital*


*variable, debido a que la primera en mención no presta servicios de telecomunicaciones o de acceso a Internet, sino únicamente servicios amparados bajo las marcas con los registros 493651 "Scholastic y DISEÑO" y 487969 "Scholastic", ambas en clase 41; así como 493652 "Scholastic y DISEÑO" y 487344 "Scholastic", ambas en la clase 35, que son servicios educativos y venta de libros y materiales educativos en línea.*

*a) Que, si bien la tercero interesada, "Corporación México Escolástica", sociedad anónima de capital variable, se dolió de que la actora, "Scholastic", Inc., registró varios dominios en internet que incluyen la palabra "escolástica" (escolastica.org, escolastica.biz, escolastica.info, escolastica.net, escolastic.org, escholastica.com, escholastica.net, escholastica.org, escholastica.info, escholastica.biz), en los cuales se hace la redirección a la página de internet oficial scholastic.com, lo cierto es que, el registro y uso de un nombre de dominio no constituye por sí el uso marcario."*

Anteriores argumentos que la sala les dio respuesta al determinar, en esencia, que existió competencia desleal porque se acreditó que en las páginas electrónicas de Scholastic, Inc., se brindaban servicios de publicidad al ofrecer anuncios en línea de otras empresas, igual que la tercero interesada, aun cuando no coincidiera con los servicios que amparan las marcas registradas 493652 y 487344 de la ahora quejosa.

Esto es, además de los servicios que amparan tales registros marcarios (servicios educativos y venta de libros y materiales educativos en línea), también ofreció, por medio de otras empresas, el servicio de publicidad, en la denominación de dominio del cual es dueño y responsable de su uso adecuado.

**D.A. 237/2015.**

64

En ese mismo sentido también le dio contestación al argumento relativo a que el nombre de dominio no es igual a una marca, por lo que no constituye un requisito para actualizar la infracción marcaria, pues la sala manifestó que lo siguiente:

> *"Ahora bien por cuanto hace a los incisos b), en los que manifiesta la parte actora que sus nombres de dominio redireccionan a su página de internet oficial scholastic.com, y lo cierto es que el **registro y el uso de un nombre de dominio no constituye por sí el uso marcario**, efectivamente como lo manifiesta la parte actora sus nombres de dominio redireccionan a su página oficial, sin embargo es hasta el momento en que se acede a los nombres de dominio de la parte actora www.escolastica.org, www.scholastic.com, www.scholastic.com.mx, www.escolastic.com, www.escolastic.net y www.scholastic.org que el usuario se puede percatar de tal situación y por el contrario confunde al usuario, haciendo suponer que al acceder en particular a los nombres de dominio www.escolastica.org, www.escolastic,com, y www.escolastic.net, se trata de las marcas de las cuales es titular la ahora tercero interesada, toda vez que en primer lugar existe una semejanza en grado de confusión entre los registros marcario propiedad de la ahora tercero interesada entre CORPORACIÓN MÉXICO ESCOLÁSTICA (671124 ESCOLÁSTICA Y DISEÑO, y 669004 ESCOLÁSTICA Y DISEÑO, ambas registradas en las clases 38 telecomunicaciones y 35 publicidad, respectivamente) y los nombres de dominio de la hoy actora www.escolastica.org, www.escolastic,com, y www.escolastic.net es decir, si bien es cierto que la similitud o identidad de dos o más denominaciones marcarias no es un elemento esencial para determinar su confusión, lo cierto es que sí constituye un elemento indicativo de la confusión marcaria que se puede generar en el público consumidor, lo cual se complementa con.el análisis conjunto y alternado de las denominaciones, es decir, observándolas por la totalidad de sus elementos y pronunciándolas una seguida de la otra, tal y como lo han señalado los*




criterios jurisdiccionales, hecho que se aprecia en el ejercicio que a continuación se expone: (...)

Lo anterior, no es negado por la parte actora, por el contrario sostiene que escolástica es la traducción al español de scholatic, sin embargo esto no desacredita la semejanza en grado de confusión que existe entre los registros marcarios de los cuales es titular la hoy tercero interesada 671124 ESCOLÁSTICA Y DISEÑO, y 669004 ESCOLÁSTICA Y DISEÑO y los nombres de dominio registrados por la hoy actora SCHOLASTIC, INC.

En esa tesitura, la competencia desleal se genera cuando existen de parte de un competidor, actos contrarios a los buenos usos y costumbres en la industria, comercio y servicios que contravengan las disposiciones que la Ley aplicable prevé, aunado a que con tales actos se cause confusión o se induzca al público consumidor a error o engaño, obteniendo así ventajas indebidas y sustrayendo, infringiendo y explotando el derecho de otro competidor.



Cabe agregar, que entre los derechos derivados de las marcas 671124 ESCOLÁSTICA Y DISEÑO, y 669004 ESCOLÁSTICA Y DISEÑO, de las cuales es titular la hoy tercero interesada CORPORACIÓN MÉXICO ESCOLÁSTICA, encuentran su protección contra actos de competencia desleal, con los nombres de dominio www.escolastica.org, www.scholastic.com, www.scholastic.com.mx, www.escolastic.com, www.escolastic.net y www.scholastic.org, de los cuales es titular la hoy actora SCHOLASTIC, INC., aparentando que existe una relación entre ambos, sin que eso sea cierto.

De tal forma, que la actora al identificar sus nombres de dominio con la palabra "escolastic", misma que resulta ser semejante en grado de confusión a los registros de la hoy tercero interesada, siendo que en dichos nombres de dominio se ofrecen servicios de publicidad y telecomunicaciones los cuales encuadran dentro de los productos que se encuentran protegidos por el los registros marcarios de la hoy tercero interesada, es claro que dicha conducta constituye un

*acto de competencia desleal, toda vez que el mismo*
*se aprovecha de la imagen y reputación de las marcas*
*del hoy tercero interesado."*

Son **infundados** los conceptos de violación en los que
aduce que la sala omitió tomar en consideración los registros
marcarios de la quejosa, toda vez que de la sentencia de
nulidad se advierte que efectivamente los estudió, pues adujó,
entre otras cuestiones, que la actora realiza actos de publicidad
al ofrecer anuncios en línea diversos a los productos que
protegen sus registros marcarios (493651 y 493652), como se
advierte a foja 730 vuelta.

En otro orden de ideas, la quejosa aduce como
conceptos de violación los siguientes:

• Que la página de internet tiene un carácter global,
pues no tiene la terminación .mx, y está disponible únicamente
en Ingles, lo que acredita que dicha página no está dirigida al
público consumidor mexicano.

• El hecho de que exista información e hipervínculos
que se refieran a la posible contratación de publicidad en la
revista CoachPlus, no significa que un consumidor mexicano
que quisiera contratar servicios de publicidad, pudiera hacerlo,
como lo afirma la sala, pues la quejosa no comercializa en
México ni el público consumidor podría contratar dichos
servicios de publicidad, pues estaba dirigida únicamente a
consumidores estadounidenses.

• *Existirá prestación de servicios de publicidad en*



PODER JUDICIAL DE LA FEDERACIÓN

México, única y exclusivamente cuando los consumidores mexicanos deseen contratar servicios para publicitar, pero no cuando puedan simplemente observar en internet productos o servicios publicitados por terceros para que sean adquiridos por consumidores mexicanos.

• A la tercera perjudicada le correspondía acreditar que los servicios prestados por la ahora quejosa se encontraban disponibles en México, pues la liga electrónica o información sobre tarifas y anuncios en la revista Coachplus no prueba que los servicios pueden ser contratados desde México.

• La tercero interesada no tiene exclusividad de la palabra aislada "Escolástica", pues es un concepto genérico de la educación.

Los aludidos conceptos de violación son **inoperantes** en razón de que resultan ser argumentos novedosos, ya que no se plantearon en su momento ante la sala responsable y, por ende, no pueden analizarse en esta instancia constitucional, de lo contrario este Tribunal Colegiado se estaría sustituyendo a el Tribunal administrativo del conocimiento, quien no tuvo la oportunidad de resolverlos en la determinación reclamada, por lo que de efectuarse dicho estudio se contravendría la técnica que rige la materia de amparo, introduciendo en la litis constitucional argumentos no controvertidos en el juicio de origen.

De la lectura del escrito de demanda de nulidad que obra a fojas 1 a 34, se advierte que la actora no esgrimió ninguno de

los argumentos encaminados a demostrar que el contenido de la página electrónica no está dirigido al público consumidor mexicano pues no tiene la terminación .mx, que los productos no se comercializan en México, que no se corroboró que los servicios de publicidad los podían contratar los consumidores mexicanos, que dicha carga que le correspondía a la tercera perjudicada, o que no existía exclusividad de la palabra escolástica por ser genérica.

Por el contrario, en dicho ocurso esgrime tres conceptos de nulidad, en los que en esencia, versan sobre las excepciones de falta de legitimación activa y de falta de legitimación pasiva; la ilegalidad de la resolución impugnada, que las partes no compiten comercialmente pues no se dedica a la publicidad, que el registro de dominios de protección fue de buena fe, que no incurrió en prácticas de competencia desleales, que la resolución impugnada carece de fundamentación, que el registro de los dominios no constituye un acto de competencia desleal.

Por tanto, si este tribunal federal procediera a estudiarlos, conllevaría a analizar el acto reclamado en forma distinta a la en que aparece probado ante la responsable, circunstancia que contraviene lo dispuesto en el artículo 78 de la Ley de Amparo.

A mayor abundamiento, contrariamente a lo sostenido por la promovente, del escrito de diez de junio de dos mil ocho[5], por el cual la ahora quejosa da contestación a la solicitud de

---

[5] *Foja 5 del escrito de mérito.*



OCER JUDICIAL DE LA FEDERACIÓN

infracción solicitada, contenida en el expediente administrativo P.C. 115/2008 (I-23) 1258, y de la demanda de nulidad, se advierte que ésta adujó que lleva más de siete y ocho años prestando sus servicios en México, con lo que queda evidenciado la contradicción en la que incurre.

Sirve de apoyo la jurisprudencia I.6º.T. J/2 del Sexto Tribunal Colegiado en Materia de Trabajo del Primer Circuito, visible en la página 68, tomo I, abril de 1995, Novena Época del Semanario Judicial de la Federación y su Gaceta, identificada en el IUS con el número de registro 205,277, que a la letra dice:



*"CONCEPTOS DE VIOLACION INATENDIBLES, CUANDO EN EL AMPARO SE PLANTEAN CUESTIONES QUE NO FUERON ADUCIDAS EN EL JUICIO NATURAL.- Si la autoridad responsable no tuvo la oportunidad de dirimir en el juicio las cuestiones aducidas, porque no fueron planteadas en los términos que ahora se esgrimen en el juicio de amparo, no pueden ser motivo de estudio los conceptos de violación aludidos, porque el acto reclamado, de conformidad con el artículo 78 de la Ley de Amparo, debe analizarse tal como aparezca probado ante la autoridad responsable".*

Asimismo, por similitud jurídica la jurisprudencia VI.2º.A. J/7 del Segundo Tribunal Colegiado en Materia Administrativa del Sexto Circuito, visible en la página 1137, Tomo XXI, Abril de 2005, Novena Época del Semanario Judicial de la Federación y su Gaceta, identificada en el IUS con el número de registro 178,788, cuyo texto es del tenor literal siguiente:

*"CONCEPTOS DE VIOLACIÓN EN EL AMPARO DIRECTO. INOPERANCIA DE LOS QUE*

*INTRODUCEN CUESTIONAMIENTOS NOVEDOSOS QUE NO FUERON PLANTEADOS EN EL JUICIO NATURAL.-* Si en los conceptos de violación se formulan argumentos que no se plantearon ante la Sala Fiscal que dictó la sentencia que constituye el acto reclamado, los mismos son inoperantes, toda vez que resultaría injustificado examinar la constitucionalidad de la sentencia combatida a la luz de razonamientos que no conoció la autoridad responsable, pues como tales manifestaciones no formaron parte de la litis natural, la Sala no tuvo la oportunidad legal de analizarlas ni de pronunciarse sobre ellas".

Por otra parte, la quejosa aduce que no prueba que los servicios de publicidad son prestados por la quejosa; la sala incorrectamente determina que la quejosa presta servicios de publicidad, cuando lo único que existe en todo caso es publicidad de productos o servicios de terceros extranjeros, en una página dirigida al público consumidor de Estados Unidos; que la sala no advirtió que los nombres de dominio que la ahora quejosa registró, también son semejantes en grado de confusión a sus marcas.



Los anteriores argumentos se estiman insuficientes para desvirtuar las consideraciones torales vertidas por la sala en la sentencia de nulidad para reconocer la legalidad de las consideraciones, como lo son las siguientes:

- Que se actualizó la infracción administrativa, pues se cumplieron las tres hipótesis normativas contenidas en el artículo 213, fracción I, de la LPI, consistentes en: i) que el acto realizado sea contrario a las buenos usos y costumbres en la



PODER JUDICIAL DE LA FEDERACIÓN



industria comercio y servicios, ii) que implique una competencia desleal y, iii) que se relacione con la materia que la LPI regula, porque los registros de dominio www.escolastica.org, www.scholastic.com, www.scholastic.com.mx, www.escolastic.com, www.escolastic.net y www.scholastic.org, por parte de la hoy actora SCHOLASTIC, INC., van en contra de los buenos usos y costumbres en la industria comercio y servicios, en virtud de que la marca Escolástica es una marca registrada para servicios de publicidad de conformidad con los títulos marcarios 671124 y 669004, y se acreditó que la ahora quejosa Scholastic, Inc. realizó en su página electrónica actividades de publicidad; y que los nombres de dominio y las marcas son semejantes en grado de confusión fonética, pues confunden a los consumidores, ya que se identificaría la denominación de la página con la marca de la tercero perjudicada.

- Que del acta de la visita de inspección se acreditó que la ahora quejosa realiza anuncios en línea, tarifas de anuncios en línea, ofrece el contacto con el equipo de publicidad, la comercialización de CoachPlus y anunciarse, actividades que comprenden la publicidad y comercialización que protegen las marcas de la tercera perjudicada.

- Que existe semejanza en grado de confusión entre

los registros marcarios de los cuales es titular la tercero interesada 671124 ESCOLÁSTICA Y DISEÑO, y 669004 ESCOLÁSTICA Y DISEÑO y los nombres de dominio registrados por la hoy actora SCHOLASTIC, INC.

- Que en los nombres de dominio se ofrecen servicios de publicidad, los cuales encuadran dentro de los productos que se encuentran protegidos por los registros marcarios de la tercero interesada, por lo que dicha conducta constituye un acto de competencia desleal, pues el mismo se aprovecha de la imagen y reputación de las marcas del hoy tercero interesado.

- Que realiza publicidad de otras empresas que aunque tengan origen estadounidense son conocidas en México y también se comercializan en este país.

- En la parte final de la sentencia analizó la legalidad de la multa impuesta a la actora, aunque no se haya esgrimido agravio en su contra.

De la confrontación de los conceptos de violación, así como de dichas consideraciones, se desprende que la promovente es omisa en desvirtuar estas últimas, y siendo que en atención al principio de estricto derecho que rige el juicio de amparo, cuando se trata de la materia administrativa, este




ODER JUDICIAL DE LA FEDERACIÓN

tribunal está constreñido a analizar el acto reclamado a la luz de los conceptos de violación que al respecto se le planteen, sin que le sea permitido realizar un estudio oficioso del asunto, máxime que no se actualiza ninguna de las hipótesis contenidas en el artículo 76 bis de la Ley de Amparo, que permita la suplencia de la queja, los motivos de inconformidad hechos valer por la quejosa, **se estiman inoperantes por insuficientes, pues al no combatir las consideraciones aludidas, éstas se mantienen firmes para continuar rigiendo el sentido de la decisión.**



Tiene aplicación a lo expuesto la jurisprudencia 1ª./J.81/2002, emitida por la Primera Sala de la Suprema Corte de Justicia de la Nación, publicada en el Semanario Judicial de la Federación y su Gaceta, Novena Época, Tomo XVI, Diciembre de 2002, página 61, que señala:

*"CONCEPTOS DE VIOLACIÓN O AGRAVIOS. AUN CUANDO PARA LA PROCEDENCIA DE SU ESTUDIO BASTA CON EXPRESAR LA CAUSA DE PEDIR, ELLO NO IMPLICA QUE LOS QUEJOSOS O RECURRENTES SE LIMITEN A REALIZAR MERAS AFIRMACIONES SIN FUNDAMENTO. El hecho de que el Tribunal Pleno de la Suprema Corte de Justicia de la Nación haya establecido en su jurisprudencia que para que proceda el estudio de los conceptos de violación o de los agravios, basta con que en ellos se exprese la causa de pedir, obedece a la necesidad de precisar que aquéllos no necesariamente deben plantearse a manera de silogismo jurídico, o bien, bajo cierta redacción sacramental, pero ello de manera alguna implica que los quejosos o recurrentes se limiten a realizar meras afirmaciones sin sustento o fundamento, pues es obvio que a ellos corresponde*

*(salvo en los supuestos legales de suplencia de la queja) exponer razonadamente el porqué estiman inconstitucionales o ilegales los actos que reclaman o recurren. Lo anterior se corrobora con el criterio sustentado por este Alto Tribunal en el sentido de que resultan inoperantes aquellos argumentos que no atacan los fundamentos del acto o resolución que con ellos pretende combatirse."*

Al no haber prosperado los conceptos de violación, el amparo adhesivo queda sin materia, toda vez que de conformidad con lo dispuesto en el artículo 182 de la Ley de Amparo, la pretensión del juicio de amparo adhesivo es accesoria al principal y, por tanto, de no prosperar éste, sea por cuestiones procesales o por desestimarse los conceptos de violación, el quejoso adherente ve colmada su pretensión, consistente en la subsistencia del acto reclamado lo que en la especie se actualizó.

Sirve de apoyo a lo anterior, por identidad de razón, la jurisprudencia número 1a./J. 49/2014 (10a.), emitida por la Primera Sala de la Suprema Corte de Justicia de la Nación del tenor siguiente:

*"AMPARO ADHESIVO. DEBE DECLARARSE SIN MATERIA CUANDO ES PROMOVIDO CON LA FINALIDAD DE OFRECER ARGUMENTOS ENCAMINADOS A QUE SUBSISTA EL ACTO RECLAMADO EN SUS TÉRMINOS PERO EL JUICIO DE AMPARO PRINCIPAL NO PROSPERE POR CUESTIONES PROCESALES O POR DESESTIMARSE LOS CONCEPTOS DE VIOLACIÓN.-Del artículo 182 de la Ley de Amparo se advierte, entre otras hipótesis, que el amparo adhesivo podrá promoverlo quien obtuvo sentencia*




POLER JUDICIAL DE LA FEDERACIÓN

favorable en sede ordinaria para que, ante el juicio de amparo promovido por su contraparte, exprese los agravios tendientes a mejorar la resolución judicial con el propósito de que el acto reclamado subsista en sus términos y adquiera mayor fuerza persuasiva. Así, dicha pretensión es accesoria del juicio de amparo directo principal y, por tanto, de no prosperar éste, sea por cuestiones procesales o por desestimarse los conceptos de violación, el quejoso adherente ve colmada su pretensión, consistente en la subsistencia del acto reclamado y, consecuentemente, el amparo adhesivo debe declararse sin materia.[6]

Por las razones que anteceden y al haber resultado infundados en una parte e inoperantes en otra los conceptos de violación en estudio, lo procedente es negar el amparo solicitado, por lo que debe quedar firme y con plenos efectos la sentencia que constituye el acto reclamado.

Por lo expuesto y fundado, **se resuelve**:

**PRIMERO.-** La Justicia de la Unión **NO AMPARA NI PROTEGE** a **SCHOLASTIC, INC.,** contra la sentencia de tres de febrero de dos mil quince, dictada por la Sala Especializada en Materia de Propiedad Intelectual del Tribunal Federal de Justicia Fiscal y Administrativa, en el juicio contencioso administrativo 533/11-EPI-01-4.

**SEGUNDO.** Se declara **sin materia** el juicio de amparo adhesivo promovido por **CORPORACIÓN MÉXICO ESCOLÁSTICA, S.A. DE C.V.**

---

[6] Décima Época.- Registro: 2007284.- Fuente: Gaceta del Semanario Judicial de la Federación.- Libro 9, Agosto de 2014, Tomo I.- Materia(s): Común.- Página: 177.

**NOTIFÍQUESE**; con testimonio de esta resolución, devuélvanse los autos a la sala de su origen y, en su oportunidad, archívese este asunto.

**A S Í**, por unanimidad de votos de la magistrada María Alejandra de León González (Presidenta), del magistrado Jesús Antonio Nazar Sevilla y del licenciado Carlos Bahena Meza, secretario de tribunal en funciones de magistrado, autorizado por la Comisión de Carrera Judicial del Consejo de la Judicatura Federal, en sesión de siete de julio de dos mil quince, contenida en el oficio CCJ/ST/3157/2015, por licencia de la magistrada Guillermina Coutiño Mata; lo resolvió este Cuarto Tribunal Colegiado en Materia Administrativa del Primer Circuito, siendo ponente el segundo de los nombrados.

Firman; los magistrados y el secretario en funciones de magistrado, con la intervención de la secretaria de acuerdos, quien autoriza y da fe.

MAGISTRADA PRESIDENTA

MARÍA ALEJANDRA DE LEÓN GONZÁLEZ



PODER JUDICIAL DE LA FEDERACIÓN

LA LICENCIADA ERIKA GABRIELA MEJÍA ALVAREZ, SECRETARIA DE ACUERDOS DEL CUARTO TRIBUNAL COLEGIADO EN MATERIA ADMINISTRATIVA DEL PRIMER CIRCUITO.

## CERTIFICA

QUE LAS PRESENTES COPIAS SON FIELES DE LAS CONSTANCIAS QUE OBRAN EN EL EXPEDIENTE NÚMERO D.A. 237/2015, PROMOVIDO POR SCHOLASTIC, INC., SE EXPIDEN EN CUARENTA FOJAS ÚTILES EN CUMPLIMIENTO DE LO DISPUESTO POR EL AUTO DE FECHA OCHO DE MARZO DE DOS MIL DIECISÉIS, Y A PETICIÓN DE LA PARTE TERCERO INTERESADA PARA LOS EFECTOS LEGALES A QUE HAYA LUGAR.- CIUDAD DE MÉXICO, TRECE DE ABRIL DE DOS MIL DIECISÉIS.- DOY FE.



CUARTO TRIBUNAL COLEGIADO
EN MATERIA ADMINISTRATIVA
DEL PRIMER CIRCUITO

D.A. 237/2015.

78

DEVUELTO A LA SECRETARIA
DE      ACUERDOS,      CON
ENGROSE      EN      FECHA:
_____ 1̶3̶ 9 AGO 2015

SE HACE CONSTAR QUE ESTA FOJA ES PARTE FINAL DE LA SENTENCIA
PRONUNCIADA EN EL AMPARO DIRECTO 237/2015, DICTADA EN SESIÓN DE
QUINCE DE JULIO DE DOS MIL QUINCE, PROMOVIDO POR SCHOLASTIC, INC.

